County of Yuba *v.* Adams & Co.

| 7 | 35 |
|---|---|
| 123 | 61 |

## COUNTY OF YUBA *v.* ADAMS & CO. *et al.*

A. & Co. having, on general deposit with B. & Co., of Marysville, seventy-five thousand dollars, a tax for county purposes was levied thereon, and payment demanded, both of B. & Co., and A. & Co.: *Held,* that the tax was legal.

The levy of the tax created a judgment and lien on the property, having the force and effect of an execution, and could be enforced in the same manner.

Property, in the custody of the law, is not liable to seizure, without an order from the Court having charge thereof.

APPEAL from an order of the District Court of the Tenth Judicial District, in the County of Yuba, dismissing petition of intervention.

Adams & Co., bankers, having a house in Marysville, in Yuba county, failed in February, 1855. At the time of their failure, their agent, in Marysville, deposited, as a general deposit, with Brumagim & Co., the sum of seventy-five thousand dollars belonging to Adams & Co., and which had been used about their business in said city, the certificates of deposit being taken in the name of Cohen, receiver in the suit of Adams *v.* Haskell et al. A tax for county purposes was levied on this fund, and payment was demanded, both of Brumagim and the former agent of Adams & Co., who declined to pay it. Many of the creditors of Adams & Co., including the present defendants, having attached

the funds in the hands of Brumagim, an action was commenced by the latter firm against Adams & Co., Cohen, receiver, and the attaching creditors, to determine their several rights to the fund, which was paid to a receiver appointed by the Court. In this action, the county of Yuba intervened, claiming a lien on said fund for the amount of taxes assessed against it. Adams & Co., and Cohen, receiver, failed to answer to the petition of intervention, and judgment by default was taken against them. The contest here is between the county of Yuba, intervenor, and certain of the creditors. Judgment was rendered in the Court below, against the intervenor, who appealed.

*Chas. H. Bryan*, for Appellants.

As to plaintiff's right to intervene : this is settled by Statutes of 1854, p. 73, §§ 71, 72; Brooks v. Hager & Lent, 5 Cal., 281. It is in the nature of a petition to supersede decree, and distribute assets; Story's Eq. Pleadings, p. 99, §§ 16–21.

The money on which we seek to collect taxes, was money used, owned, and employed, by Adams & Co., in the city of Marysville, and was assessed as their money, on deposit with Brumagim & Co., demand being made for the payment of taxes, and a refusal to pay the same.

The difference between our revenue laws and those of most other states, is, that as to personal property, the lien with us is exclusive, and attached to the property, whilst in other states, the remedy is against the person, and not the property, as to taxes upon personal property.

The Revenue Act of 1854, which is in force, Statutes 1854, p. 112, § 99, provides that : The lien of the state, for all taxes for state and county purposes, shall attach on all real and personal estate, and such lien, to the absolute exclusion of all other liens, shall continue until all taxes thereon are paid, etc.

The government must first be paid, and looks to the property, and cannot be entangled in discussions as to ownership.

This, viewed merely as an abstract question, must be self-evident. A government could never collect taxes, and could not last for a day, if it could not pursue the property for revenue purposes, regardless of who owned it.

The question, then, is not who owns the property, or who claims it for debt; but is the tax legal and just? If so, the property must pay, and the government can go no further.

This is the reasoning of all Courts, and it could not be otherwise.

*Chas. Lindley* for Respondents.

If the statute has omitted to provide a system of garnishments on choses in action, and omitted to provide a mode of collecting from garnishees the taxes on the debts due the person assessed, as in this case, then we must suppose the omission to be intended

to avoid complication of the affairs of government in the collection of taxes, and a disturbance of the business and commercial relations between men;—the state relying upon the arbitrary lien upon real estate and personal property subject to execution, and the chances of collecting the delinquent tax upon the duplicates of another year.    But it matters not whether the omission be intentional or accidental, so long as it exists.

No tax lien attached on the fund in dispute.    It was but a debt due from Brumagim & Co. to Adams & Co., or their receiver, on general certificate.    The money itself, sought to be taxed, was the money of Brumagim & Co,, and although Adams & Co. might have been liable to be assessed and taxed for solvent debts exceeding indebtedness, yet they have not been so assessed and taxed; but if so, the lien only extended to the real estate and personal property subject to seizure, etc.

TERRY, J., after stating the facts, as above, delivered the opinion of the Court—MURRAY, C. J., concurring.

The several objections to the right of the county to institute this proceeding, are, as we think, settled by the six hundred and fifty-ninth section of our Practice Act, which provides, that any person shall be entitled to intervene in an action, who has an interest in the matter in litigation in the success of either party, or an interest against both.

By our Revenue Act, money is included in the term "personal property," and is subject to be assessed for taxes, whether in the hands of the owner, or any other person.    See Acts of 1854, p. 104, §§ 60–74.

The levy of the tax gave to the intervenor a judgment and lien on the property assessed, having the force and effect of an execution, which might be enforced in the same manner as other executions.    See § 86 of same act.    This lien was not divested by the subsequent proceedings taken by Brumagim and others; but the fund, being in the custody of the law, was not liable to seizure, and the proper remedy was by direct application to the Court having the fund in possession.

But if we were doubtful of the regularity of the intervention, there is another fact disclosed by the record, which is conclusive as to the rights of the parties to this action.    Adams & Co., and Cohen, receiver, have, by failing to answer, admitted the right of the intervenor to recover.    The only parties contesting, are certain creditors who claim to have a lien upon the fund by reason of having attached it, in the hands of Brumagim & Co.    It appears that the levy of such attachment was made, whilst the fund held by Brumagim, as the bailee of Cohen, a receiver, duly appointed by a competent Court, was, under the former ruling of this Court, not liable to be attached.    See Adams *v.* Haskell, Jan. T., 1856.    It follows that defendants, having no lien upon the

fund in dispute, are not in a condition to deny the rights of the intervenor.

Judgment reversed.