HORN v. THE VOLCANO WATER COMPANY et al. DE-
FENDANTS, AND RAWLE, SHAFFER et al. INTERVENORS.

A COPY of the note sued on being attached to, and made part of, the complaint,
the answer, not verified, admits the genuineness and due execution of the note,
and entitles the plaintiff to judgment.

In suit on a note and mortgage, where creditors of the defendant intervened, al-
leging the note and mortgage to be fraudulent as against them, the intervenors
cannot prevent a judgment for plaintiff against defendant. The most they can
claim, is protection against the enforcement of the judgment to their prejudice.

The interest which entitles a person to intervene in a suit between other parties,
must be in the matter in litigation, and of such a direct and immediate character
that the intervenor will either gain or lose by the direct legal operation and
effect of the judgment.

It must be that created by a claim to the demand, or some part thereof, in suit,
or a claim to, or lien upon, the property, or some part thereof, which is the sub-
ject of litigation.

A simple contract creditor of a common debtor cannot intervene in a foreclosure
suit.

But judgment creditors, being, as such, subsequent incumbrancers, may intervene.
And a Court may order them to be made parties, probably by an amendment of
the complaint as the better course, or on petition of intervention.

Subsequent creditors cannot complain, that the note and mortgage of a common
debtor were executed without consideration.

As against subsequent creditors a conveyance, even if voluntary, is not void, unless
fraudulent in fact—that is, made with the view to future debts ; though the evi-
dence of an intent to defraud existing creditors is deemed sufficient *prima facie*
evidence of fraud against subsequent creditors.

APPEAL from the Fifth District.

Plaintiff brought suit against the Volcano Water Company on
a note and mortgage executed by the Trustees of the company.
The other defendants were the holders of a note and mortgage
executed by said company, of even date with the plaintiffs, and
with the agreement that the two mortgages should be paid *pro
rata*.

The company filed a general denial in answer. Some of the
other defendants answered, but it is not material to notice the
answers. Certain creditors of the company intervened, alleging
fraud in the execution of the note and mortgage to plaintiff, and
that they were void as against the company and its creditors.
Plaintiff gave in evidence his note and mortgage, and, with the
admission that the same were properly executed and recorded,
and the premises correctly described in the complaint, rested.
The only further facts necessary are contained in the opinion of
the Court. The Court below gave judgment for defendants, and
plaintiff appeals.

*W. W. Cope*, for Appellant, argued : 1. That the decision of

Horn *v.* The Volcano Water Company *et al.*

the Court below was not in writing, and that the case of Walker *v.* Sedgwick, (5 Cal. 192,) holding the statute to be inapplicable to chancery cases, is not law. (Sands *v.* Church, 2 Seldon, 356; Davis *v.* Mayor of New York, cited in Voorhies' Code, 378.)

2. Plaintiff was entitled to judgment against the company on the pleadings. A copy of the note was a part of the complaint, and the answer was not verified.

The position of the other defendants was not antagonistic to the plaintiff, and presented no obstacle to his recovery. They could not avail themselves of the defense interposed by the intervenors. Even if their allegation as to the fraud in the note and mortgage were true, it could not affect the case as between the plaintiff and defendants. The instruments were not absolutely void, but only so as against creditors and purchasers impeaching them. (Henriques *v.* Howe, 2 Edw. Ch. R. 120; 18 Johns. 515; 5 Cow. 547.)

3. The petitions of intervention do not state facts sufficient to constitute a cause of action, or entitle intervenors to any relief as against the note and mortgage of plaintiff; because:

1st. The petition of Rawle shows that he is only a simple contract creditor of the Water Company, and it does not appear that payment of any portion of his demands is secured either by a lien or mortgage. (Stow *et al. v.* Manning, 2 Scam. 530; Manchester *et al. v.* McKee, 4 Gil. 511; Crippen *v.* Hudson, 3 Ker. 161.)

2d. The petition of Shaffer and others, shows that they are judgment creditors of the company, and that their judgments are liens upon the property mortgaged to the plaintiff; but it does not appear that an execution was ever issued on either of such judgments; or that the property is insufficient to satisfy the claims of all parties; or that there is not other property from which the intervenors could obtain satisfaction of their judgments; or that the plaintiffs' mortgage interferes in any manner with the enforcement of such judgments; or that an effort to enforce the same has been, or is now being, made.

The statute provides that, " any person shall be entitled to intervene in an action who has an interest in the matter in litigation, in the success of either of the parties to the action, or an interest against both." (Wood's Digest, 176). What is an "in-

terest," within the meaning of this statute, is not quite clear. In legal parlance this word is always used to denote *property* in lands or chattels. (2 Burr. Law Dic. 628.) In this sense it certainly does not include a lien. "A lien is not in strictness either a *jus in re* or a *jus ad rem;* that is, it is not a property in the thing, nor does it constitute a right of action for the thing." (2 Burr. Law Dic. 685; 1 Story's Eq. Sec. 506; 2 Story's R. 144, 145.) In construing the statute this word should be deemed to have been used in its strict legal sense. (Sedg. Con. and Stat. Law, 261, 262). The remedy by intervention is unknown to the common law, and should not be extended to cases which are not clearly within the spirit and meaning of the statutes. (Sedg. Con. and Stat. Law, 313, 314.)

The provisions of the Civil Code of Louisiana, in reference to interventions, are very similar to our statute. (Greiner's Prac. 147, 148.) It has been decided in that State, that a stranger to the suit cannot intervene for the purpose of aiding the defendants. (Norris' Heirs v. Ogden, 11 Mar. R. 445.)

In the case of Gasquet *et al. v.* Johnson *et al.* (1 Lou. R. 425,) where several persons had attached the same property, the Court held that a subsequent attaching creditor could not intervene for the purpose of defeating the action of a person having a prior attachment. In regard to the *interest* entitling a person to intervene in an action, the Court said: "This we suppose must be a direct interest by which the intervening party is to obtain immediate gain, or suffer loss by the judgment which may be rendered between the original parties."

But admitting that the intervenors had an interest, within the meaning of the statute, sufficient to entitle them to intervene, still their petition does not state facts enough to constitute any ground for relief. The rule is firmly established in English and American jurisprudence that the right of a creditor to appeal to a Court of Equity for relief against the fraudulent acts and transfers of his debtor depends upon the fact of his having exhausted his legal remedies without being able to obtain satisfaction of his judgment. (Manchester *et al. v.* McKee, before cited; Beck v. Burdett, 1 Paige Ch. Rep. 308; Wiggins v. Armstrong, 2 John. Ch. Rep. 144; Brown *et al. v.* McDonald, 1 Hill's Ch. Rep. 297; McKinley v. Coombs, 1 Mon. Rep. 106; Allen v. Camp, Id. 231; Halberts v. Grant, 4 Id. 580.)

But even if it were not requisite that the intervenors should have pursued their legal remedies to the extent indicated in these cases, they should clearly and conclusively have shown in their petition that they could not obtain satisfaction of their judgments without the assistance of a Court of Equity. This they have utterly failed to do. They say that they are judgment creditors, having liens upon the property mortgaged to the plaintiff, and that the plaintiff's mortgage is a fraud upon their rights. This is their entire case. The extent or value of the mortgaged property is not shown, nor is it shown that there is not other property from which they could obtain satisfaction of their judgments. The allegation of the insolvency of the company is not an allegation that the company has no property, but that it has not sufficient property to pay all its debts. (2 Burr. Law Dic. 623.) The authorities upon these points are clear and conclusive. (Coop. Eq. Pl. 149; Screven *v.* Bostick, 2 McCord's Ch. R. 410; Harrison *v.* Battle, Dev. Eq. 537; Semple *v.* Fletcher, 3 Mar. Rep. N. S. 382; Wiggins *v.* Armstrong, and several other cases before referred to.)

I have already shown that the fact of a conveyance being fraudulent as to creditors does not render it absolutely void. Our statute provides that such a conveyance shall be void as against the persons hindered, delayed, or defrauded, by it. (Wood's Digest, 107.) As to every other person it is valid. When, therefore, any creditor, or other person, shall resort to a Court of Equity for relief against such a conveyance, he must show that he is within the protection of the statute. Have the intervenors done that in this case? Have they stated a single fact tending to show that the plaintiff's mortgage stands in the way of the enforcement of their judgments? In the case of Dewey *v.* Latson, (6 Cal. Rep. 609,) the point was explicitly decided that a creditor cannot question the fraudulent acts of his debtor unless such acts are prejudicial to his interests.

It is not shown in the petition of Shaffer and others that the petitioners were creditors of the company at the time of the execution of the note and mortgage to the plaintiff, or that the company was then indebted to any other person, or had not sufficient property to pay all its debts, or that such note and mortgage were given with intent to defraud subsequent creditors.

(Hovenden on Frauds, 2 vol. 74, 75, quoting Stat. 13th Eliz. Ch. 5; 1 Story's Eq. Section 356, Chancellor Kent; Reade v. Livingston, 3 John. Ch. Rep. 481; Sexton v. Wheaton, 8 Wheat. U. S. Rep. 229.)

It has been decided in England that a creditor who seeks to avoid a voluntary conveyance made by his debtor must allege in his bill that he was a creditor at the time of the execution of such conveyance. (Ede v. Knowles, 2 Younge & Coll, N. R. 172, 178.)

In the case at bar the intervenors allege in their petition " that at the time of the giving of said note and mortgage the company had before the execution of the same already become indebted to a much greater amount than the amount of the capital stock paid in." This is the only statement in the petition having any reference to the pecuniary condition of the company at the time of the execution of the note and mortgage to the plaintiff. This statement certainly does not amount to an allegation that the company was *then* indebted in any amount whatever, but is strictly compatible with an entire freedom from indebtedness on the part of the company. It is possible that the company had contracted debts to a very large amount, and it is equally possible that these debts had been paid off. It is also possible that the company was largely indebted, but was at the same time in the possession and ownership of property sufficient to pay ten or twenty times the amount. The insufficiency of this allegation is too obvious to require further comment.

The last objection to the validity of this note and mortgage to which allusion is at all necessary is, that at the time they were given, the indebtedness of the company exceeded the amount of its capital stock actually paid in. The allegations of the petitions of intervention are not sufficiently specific to support this objection; but if they were, the conclusion arrived at does not follow. The statute was intended to operate only as between the corporation and its Trustees, as a check upon the latter and a security to the former against their reckless and improvident action. (Wood's Digest, 121, Section 14.) This is the only reasonable construction of which the statute is susceptible. If the debts of a corporation, contracted when its indebtedness already exceeds the amount of its capital stock paid in, are void and

cannot be enforced, the provision in reference to the personal responsibility of the Trustees is idle and useless. The case of Foster *et al. v.* The Oxford, Worcester, and Northampton, Railway Company (14 Eng. Law and Eq. Rep. 306) is in point.

But there is another view of the case, which is equally fatal to this objection. Sedgwick in his work on Statutory and Constitutional Law, (on p. 90,) says: " It must be borne in mind, that the invalidity of contracts made in violation of statutes, is subject to the equitable exception, that although a corporation in making a contract acts in disagreement with its charter, when it is a simple question of capacity or authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted, in an action founded on it, to question its validity." In this case, the company, having received the benefit of its contract with the plaintiff, can not question the validity of such contract, and the intervenors are in this respect in no better condition than the company, unless they can assail the contract on the ground of fraud.

*P. L. Edwards,* for Respondent.

1. The Court below did not err in withholding a written finding of the facts. (Walker *v.* Sedgwick, 5 Cal. R. 192.) Even where the Court has submitted issues of fact to a jury, it is not bound by this finding. It is, at most, advisory. (Gray *v.* Eaton, 5 Cal. R. 448; Dominguez *v.* Dominguez, 7 Id. 424; Still *v.* Saunders, 8 Id. 281.) A suit to foreclose a mortgage is peculiarly an equity proceeding. (Ballow *v.* Rogers, Admr. 9 Cal. 125.)

2. It is a sufficient answer to the second point submitted by the counsel, that the whole actual controversy was and is between the Appellant and the intervenors.

3. The intervenors do state facts sufficient to constitute a cause of action; but if not, the objection now comes too late. It should, in some form, have been raised in the Court below, and ought not to be raised for the first time in this Court. The proposition for the Appellant is, in substance, that the intervenor, Rawle, is but a simple contract creditor of the corporation, and that while the other intervenors show themselves to be

judgment creditors having a lien, they fail to show that they have exhausted their legal remedy, or that they do not show that they might obtain satisfaction without the aid of equity.

But the authorities cited are in our favor, so far as analogous, and the others do not aid Appellant. (Wiggins & Boreum *v.* Armstrong & Marshall, 2 John. Ch. R. 144; Brown *et als. v.* McDonald, 1 Hill's Ch. R. 297; Story's Eq. Jur. Sec. 506 : Gasquet *et al. v.* Johnson *et al.* 1 La. 432.)

The present, however, is not a case of the character presented in most of the cases cited by the counsel.

Here is an action already in Chancery, which, if successful, must wholly defeat the claim of the intervenors; for the corporation is insolvent.

The note and mortgage in suit are alleged to be fraudulent, and the plaintiffs and defendants are averred to be in collusion to defraud the intervenors.

But whether we are right or wrong in all this, our statute gives the remedy which we have sought, and that whether we are judgment creditors having a lien, or simple contract creditors. (Prac. Act, Sec. 659.)

This provision should be liberally construed, for it is not within the reason of the rules cited. It is purely remedial, and as such to be construed beneficially, so as to suppress the mischief and advance the remedy. (Sedgwick on Stat. Constr. 359.)

The Statute of 13 Eliz. has nothing to do with this case. It has been often held that the statute only declared and definitely ascertained the common law, and that the latter was always competent for every purpose within the purview of the former. This is a question of actual fraud, and whether present or prospective, is wholly unimportant. (4 Bac. Abr. 401; 2 Kent's Com. 440.)

This Court has already directly recognized this right of intervention. (Brooks *v.* Hager, 5 Cal. R. 281; County of Yuba *v.* Adams & Co. 7 Id. 35; Dixey *v.* Pollack, 8 Id. 570.)

FIELD, J. delivered the opinion of the Court—BALDWIN, J. and TERRY, C. J. concurring.

It was error to render judgment for the defendants. A copy of the note in suit is attached to the complaint, and the answer

of the company is simply a general denial, without verification ; and thus, by force of the statute, the genuineness and due execution of the note by the company, are to be regarded as admitted. The claims asserted by the other defendants are not inconsistent with a recovery by the plaintiff. In the judgment their rights could have been fully protected. Upon the pleadings, therefore, as between the original parties to the action, the plaintiff was entitled to judgment. Admitting that the matter set up by the intervenors constituted a fraud, and was fully established, we do not perceive how it could affect the right of the plaintiff to a judgment as against the company. The most that the intervenors could claim, was protection against the enforcement of the judgment to the prejudice of their rights; and this could have been effected by its postponement to their claims in the disposition of the proceeds arising from the sale of the mortgaged premises. As between the parties, the note and mortgage were valid; they were void, if at all, only as against creditors and subsequent purchasers. (Henriquez v. Hone, 2 Edw. Ch. Rep. 120; Anderson v. Roberts, 18 John. 514.)

But, without resting the case upon this, we pass to a consideration of the merits of the intervention : The petition of the creditor, Rawle, does not disclose any right on his part to intervene ; it shows that he was a simple contract creditor, holding obligations against the company—but it does not show that any portion of them was secured by any lien upon the mortgaged premises. His intervention is only an attempt of one creditor to prevent another creditor obtaining judgment against the common debtor—a proceeding which can find no support, either in principle or authority. The interest mentioned in the statute, which entitles a person to intervene in a suit between other parties, must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. The provisions of our statute are taken substantially from the code of procedure of Louisiana, which declares, that, "in order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit;" and the Supreme Court of that State, in passing upon the term *interest*, thus used, held this language : " This, we suppose, must be a direct interest, by

which the intervening party is to obtain immediate gain, or suffer loss, by the judgment which may be rendered between the original parties; otherwise, the strange anomaly would be introduced into our jurisprudence of suffering an accumulation of suits in all instances where doubts might be entertained, or enter into the imagination of subsequent plaintiffs, that a defendant against whom a previous action was under prosecution might not have property sufficient to discharge all his debts. For, as the first judgment obtained might give a preference to the person who should obtain it, all subsequent suitors, down to the last, would have an indirect interest in defeating the action of the first." (Gasquet *et al. v.* Johnson *et al.* 1 Louis. Rep. 431.) To authorize an intervention, therefore, the interest must be that created by a claim to the demand, or some part thereof, in suit, or a claim to, or lien upon, the property, or some part thereof, which is the subject of litigation. No such claim or lien is asserted in the petition of Rawle, and his right to intervene must, in consequence, fail. (Brown & Sons *v.* Saul *et al.* 4 Martin, N. S. 434.)

The petition of Shaffer and others, stands upon a different footing. It shows that they were judgment creditors, having liens, by their several judgments, upon the mortgaged premises at the time of the institution of the present suit. As such, they were subsequent incumbrancers and necessary parties to a complete adjustment of all interests in the mortgaged premises, though not indispensable parties to a decree determining the rights of the other parties as between themselves. For such adjustment, the Court would have been justified in ordering them to be brought in, either upon their own petition, as in the present case, or by an amendment to the complaint. (Sargent *v.* Wilson, 5 Cal. 504; Moss *v.* Warner, 10 Cal. 296; Montgomery *v.* Tutt, 11 Cal. 307.)

It would probably be the better course for the Court to direct, in a case like the present, an amendment to the complaint. No question, however, as to the form in which these parties assert their right is made, and we could not regard the point, if it were made, as essential to the determination of the priorities of the several liens. Looking, then, to the petition of these judgment creditors, and treating it as an answer to the complaint, and the

parties as asserting a priority in the liens of their several judg-
ments over the lien of the mortgage, we find its allegations in-
sufficient, if established, to justify a decree postponing the mort-
gage to the judgments. These judgments were all rendered
long after the execution of the note and mortgage;—with one
exception, more than a year afterwards. It is not averred that
these intervenors were creditors of the company when the note
and mortgage were executed, or that the company was *then* in-
debted to any other person, or that the note and mortgage were
given with intent to defraud subsequent creditors. It only
avers that they were not executed by the Trustees by any au-
thority from the company, or to pay or secure any of its debts,
or for any consideration received by it; but were given to pay,
or to secure the payment of, a debt of certain stockholders of the
company, contracted to meet the assessments levied upon their
shares. If these averments were true, the subsequent creditors
are not in a position to complain. It rests only with the com-
pany to question the authority of the Trustees, or the validity
of the note and mortgage for want of sufficient consideration.
Subsequent creditors have nothing to do with them. The Stat-
ute of 13th of Eliz. (Ch. 5,) is the foundation of the acts on the
subject of conveyances to hinder, delay, or defraud, creditors in
the several states, and has been substantially incorporated into
our law. (Act concerning Fraudulent Conveyances and Con-
tracts, Sec. 20.) This statute, says Hovenden, "declares all gifts,
conveyances, and alienations, of real or personal estate, whereby
creditors may be delayed or defrauded, void as against such
*creditors ;* but judicial interpretation has determined that cred-
itors at the time of the transaction are, alone, intended by the
statute. Thus, a settlement made after marriage, and therefore
considered voluntary, will be maintained against subsequent
creditors, provided the settler was not indebted at the time he
made it. This general rule must, however, be qualified, so as to
exclude cases of positive fraud. It is not necessary that a man
should be actually indebted, at the time he enters into a volun-
tary settlement, to make it fraudulent; if he do so with a view
to his being indebted at a future time, it is equally a fraud, and
ought to be set aside." (2 Vol. 74.)

As against subsequent creditors, then, a conveyance, even if

voluntary, is not void, unless fraudulent in fact; that is, unless made with the view to future debts, though evidence of an intent to defraud existing creditors is deemed sufficient *prima facie* evidence of fraud against subsequent creditors.    (Sexton *v.* Wheaton, 8 Wheat. 229; Bennet *v.* Bedford Bank, 11 Mass. 421; Benton *v.* Jones, 8 Conn. 186; Carlisle *v.* Rich, 8 N. Hamp. 44; Miller *v.* Thompson, 3 Porter, 196; Bogard *v.* Gardley, 4 Smedes & M. 302; Wadsworth *v.* Havens, 3 Wend. 411; Elliott *v.* Horn, 10 Ala. 348; Edwards *v.* Coleman, 2 Bibb. 204; Smith *v.* Lowell, 6 N. H. 67; Parkman *v.* Welch, 19 Pick. 231.)

The only statement in the petition of the creditors in reference to any indebtedness of the company is that *before* the execution of the note and mortgage the company had become indebted to a much greater amount than the amount of the capital stock paid in.    This statement may be strictly true, and yet the fact exist that the company was not at the time indebted in any amount whatever.    The indebtedness may have been contracted, and have been entirely canceled, or the company may have been in possession of property greatly exceeding its existing obligations, and with which such obligations were afterwards entirely satisfied.

The views which we have expressed dispose of the case upon the pleadings and petitions of intervention, and render it unnecessary to pass in review the questions raised upon the testimony. The judgment must be reversed, and the Court below directed to enter a judgment against the company for the amount due on the note described in the complaint, and to decree a sale of the mortgaged premises, and the application of the proceeds of the sale : first, to the payment of such judgment and the amount due the other defendants, such payment to be made to the parties *pro rata;* and, second, to the payment of the several judgments of the intervenors, Shaffer and others, in the order in which they became liens upon the mortgaged premises; and to dismiss the petition of the intervenor, Rawle.

Ordered accordingly.