JONATHAN LEWIS vs. NORMAN B. HARWOOD and others, Intervenors.

November 30, 1881.

Intervention—Interest Requisite.—The interest which entitles a party to intervene in an action pending between other parties, under Gen. St. 1878, c. 66, § 131, must be in the matter in litigation in the suit as originally brought, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment thereon.

Same—Complaint of Intervenors held not to show requisite Interest.—The plaintiff brought suit to recover of the defendants, as the makers of certain promissory notes, the amount thereof, and a writ of attachment

was issued therein, on his application, by virtue of which certain personal property belonging to two of the defendants was seized. Afterwards, and before judgment, the intervenors filed in the action their joint complaint in intervention, setting up separate claims and demands against such two defendants for goods sold and delivered to them. After setting up the nature and the amount of their respective claims, they alleged that the notes sued on by the plaintiff were without consideration, and were given in pursuance of a fraudulent conspiracy between plaintiff and defendants to cheat and defraud their creditors, the intervenors, and that the plaintiff's action was commenced, and the writ of attachment procured, and the property seized thereunder, in furtherance of such conspiracy; that the defendants, whose property was so attached, had no other property except the attached property, and that that was inadequate to pay their just debts and insufficient to pay the plaintiff's demand; that the intervenors had each commenced actions on their several demands against such defendants, and had caused writs of attachment to be issued in their several actions, and to be executed upon the same property attached by the plaintiff, their attachments being subsequent to his in point of time; and praying that the plaintiff's attachment be postponed to those of the intervenors. *Held,* that the complaint of the intervenors did not disclose such an interest in the subject-matter of the suit as to entitle them to intervene, and that the plaintiff's motion to dismiss the same should, therefore, have been granted.

This action was brought in the district court for Olmsted county, and was tried by *Mitchell,* J., on the issues made between the intervenors and the plaintiff, and judgment was ordered for the intervenors. A motion for a new trial was denied by *Buckham,* J., and the plaintiff appealed.

*H. A. Eckholdt* and *Chas. C. Willson,* for appellant.

*Jones & Gove,* for respondent.

CLARK, J.* This case brings before us for interpretation the section of statute relating to intervention, introduced into our Code of Practice from the Code of Civil Practice of Louisiana, which, as is well known, has its basis in the civil law. The section reads as follows: "Any person who has an interest in the matter in litigation, in the success of either of the parties to the action, or against either

* Mitchell, J., having tried the action in the district court, took no part in the decision of this appeal.

or both, may become a party to any action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, or either of them, either before or after issue has been joined in the cause, and before the trial commences. The court shall determine upon the issues made by the intervention at the same time that the issue in the main action is decided, and the intervenor has no right to delay; and if the claim of the intervenor is not sustained, he shall pay all the costs of the intervention. The intervention shall be by complaint, which must set forth the facts on which the intervention rests; and all the pleadings therein shall be governed by the same principles and rules as obtain in other plead-·ings. But if such complaint is filed during term, the court shall direct a time in which an answer shall be filed thereto." Gen. St. 1878, c. 66, § 131.

This section is not taken *in hæc verba* from the Louisiana Code, but contains the substance of its provisions so far as relates to intervention, strictly so called, as we shall hereafter more fully notice. Its language is substantially the same as that employed in the statutes of California and Iowa, the provision having been first adopted in those states, and then taken immediately by our legislature, probably from the latter state. The question involved is as to the general scope of this provision, and the extent to which its proper application varies the ordinary methods of procedure for the enforcement of civil rights in the courts of this state.

It arises upon the following statement of the proceedings had in this case: The suit was brought by the plaintiff on the 25th day of November, 1879, in the district court of Olmsted county, against Peter Lewis, Albert Lewis and William George, the two latter being copartners under the firm name of Lewis & George, to recover upon three promissory notes made by Peter Lewis and Lewis & George, payable to the order of the plaintiff, for the aggregate amount of $7,761.32. A writ of attachment was, on the application of plaintiff, duly allowed and issued in the action, on the 28th day of the same November, to the sheriff of Dodge county, by virtue of which he attached a stock

of goods in his county, belonging to Lewis & George. Afterwards, Norman B. Harwood and fourteen others, separate creditors of Lewis & George, filed in the action their joint complaint in intervention, setting up separate claims and demands against Lewis & George for goods sold and delivered to them. After setting up the nature and amount of their respective claims, they allege that the notes sued on by the plaintiff were without consideration, and were given in pursuance of a fraudulent conspiracy between the plaintiff and defendants to cheat and defraud their creditors, the intervenors; and that the plaintiff's action was commenced, and the writ of attachment procured, and the attachment made, in furtherance of such conspiracy; that Lewis & George have no other property except the attached property, and that that is inadequate to pay their just debts, and insufficient to pay the plaintiff's demands. They further allege that the intervenors have each commenced actions on their several demands against Lewis & George, one of them in the district court of Olmsted county, and all the others in the district court of Dodge county; and that they have caused writs of attachment to be issued in their several actions, and to be executed upon the same stock of goods, their attachments being subsequent in point of time to that of the plaintiff. They pray that the plaintiff take nothing by his action, and that his attachment be postponed to those of the intervenors.

The plaintiff answered this complaint in intervention, denying the alleged fraud and want of consideration for his notes, and alleging that the demands of the intervenors against Lewis & George were not due when they brought their suits, the goods having been sold on a credit which had not then expired. The intervenors replied, alleging that the credit was procured by false representations, forming a part of the conspiracy to defraud them, to which the plaintiff was a party. The defendants having made default, upon the filing of the ordinary affidavit of no answer, judgment was entered against them in favor of the plaintiff on the 22d day of December, 1879, for $7,951.15 damages and costs. Afterwards, and in December, 1880, the case having been called for trial on the issues made by the pleadings between the plaintiff and the intervenors, the plaintiff moved to dismiss the complaint in intervention, for the reason that

it did not disclose facts authorizing an intervention, which motion was denied, and the plaintiff took his exception. The plaintiff also moved for judgment on the pleadings against the intervenors, on the ground that the complaint in intervention stated no ground of defence to his cause of action, which motion was also denied, and the plaintiff excepted. The plaintiff also demanded a jury trial, which was refused by the court, and to such ruling he excepted. These issues were thereupon tried by the court, and a decision was afterwards filed, finding that there was a good consideration for the notes as between the plaintiff and the defendant Peter Lewis, and that Lewis & George signed the same as surety for the latter, but for the fraudulent purpose alleged by the intervenors, to which the plaintiff was a party; and ordering judgment to be entered declaring the plaintiff's attachment fraudulent and void as against the intervenors, and postponing the lien thereof to the liens of the attachments in favor of the intervenors. A statement of the case having been made and signed, the plaintiff moved for a new trial on the ground that said decision is contrary to law and not justified by the evidence, and for errors of law occurring at the trial and excepted to by the plaintiff, which motion was denied, and the case is now before us on appeal by the plaintiff from the order denying the same.

It is claimed on the part of the appellant that the entertaining of the complaint of the intervenors, and suffering them to introduce the grievances alleged therein into this action, was giving the statute an effect beyond its letter and spirit; that intervention, by the very terms of the statute, is permitted to those who have an interest in the subject-matter of the action, and in the judgment which the plaintiff seeks; and that in this case the debt evidenced by the notes was the subject of the action, and that the intervenors had no interest whatever in it, or in the judgment which should be rendered for its enforcement or for its denial. We were strongly impressed with the correctness of these views upon the argument, and the investigation and reflection which we have since given the subject have confirmed the opinion then entertained. The correct interpretation of the statute we conceive to be clearly expressed by Mr. Justice Field in *Horn* v. *Volcano Water Power Co.*, 13 Cal. 62, in the following

language, which was quoted with approval in *Bennett* v. *Whitcomb,* 25 Minn. 148 : "The interest which entitles a person to intervene in a suit between other parties must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." We have met with no decision which undertakes, upon a full consideration of the correct interpretation of this statute, or of any similar one, to extend its application so as to hitch on to the subject-matter of the suit a contention by strangers with respect to the right of property, or the avails thereof, seized in the suit by the collateral remedial process of attachment.

As the remedy by intervention, so far as it is statutory, has its origin in the Code of Civil Practice of Louisiana, we naturally turn to the decisions of the courts of that state for light with reference to its interpretation. The statute of Louisiana is as follows :

"Art. 389. An intervention or interpleader is a demand by which a third person requires to be permitted to become a party in a suit between other persons, either by joining the plaintiff in claiming the same thing, or something connected with it, or by uniting with the defendant in resisting the claims of the plaintiff.

"Art. 390. In order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit."

By a subsequent amendment it was provided that articles 389 and 390 shall be so amended that it shall not be necessary that the party interpleading shall join either the plaintiff or defendant, but that it may be lawful for him, where his interest requires it, to oppose both.

"Art. 391. One may intervene, either before or after issue has been joined in the cause, provided the intervention do not retard the principal suit. The person intervening must be always ready to plead, or to exhibit his testimony, because he has always his remedy by a separate action to vindicate his rights.

"Art. 392. The plaintiff in intervention must institute his demand before the court in which the principal action has been brought; it being considered as plaintiff, he must follow the jurisdiction of the defendant.

"Art. 393. The intervention must be formed by a petition addressed to the court before which the principal demand has been brought; it must set forth the grounds on which the cause is supported. This petition must be served on the party against which it is directed, in order that he may answer to the same in the delay given in ordinary suits.

"Art. 394. The judge cannot refuse to admit an intervention; but he must pronounce on its merits at the same time that he decides the principal action. If the demand be not sustained, the person intervening shall be decreed to pay the incidental costs." Code of Practice of Louisiana, 1853.

An interpretation was given to these provisions with respect to the question now under consideration, in the case of *Gasquet* v. *Johnson*, 1 La. 425. A second attaching creditor claimed the right, by virtue of his attachment, to intervene in order to show that he was entitled to the prior lien by reason of an infirmity in the first attachment; but his right to do so was denied on the ground that he had not such an interest in the matter in litigation, within the meaning of the statute, as to entitle him to intervene. A more full statement of the facts of the case, together with the very satisfactory reasons given by the court for its conclusions, may be found in the opinion in *Bennett* v. *Whitcomb*, *supra*.

There are many cases in the Louisiana Reports where a third party, who claimed to own or to have a preference of payment out of, or a lien upon, attached property, has been allowed to assert his rights and have them determined in the suit in which the attachment was made. But in this class of cases the remedy was invoked under other provisions of the Code of Practice of Louisiana, entitled "Of the Opposition of Third Persons," which have not been engrafted upon our Code. These provisions are as follows:

"Art. 395. This opposition is a demand brought by a third person, not originally a party in the suit, for the purpose of arresting the execution of an order of seizure, on judgment rendered in such suit, or to regulate the effect of such seizure in what relates to him.

"Art. 396. Such opposition may take place in two cases, *first*, when the third person, making the opposition, pretends to be the owner of

the thing which has been seized; *second,* where he contends that he has a privilege on the proceeds of the thing seized and sold."

Other provisions follow, regulating the mode of proceeding, and, among others, a provision for enjoining the sheriff against proceeding to the sale of the property thus claimed, if the claimant shall give security to the plaintiff, for such amount as the court shall determine, to be responsible for all damages which the plaintiff may sustain should the opposition be wrongfully made.

The "privilege" alluded to, as defined by the Code of Civil Law, may, without being precise, be a mere preference of payment out of the defendant's property, as in the case of laborers' wages, or a specific lien upon the property seized, arising by operation of law, as the lien of an artisan for repairs, or by agreement of the parties, as in the case of a pledge. We have met with no case where the claim of priority by a second attaching creditor has been allowed to be asserted by interposing in the attachment suit; and if an attachment lien, which forms no part of the matter in litigation, but is only a part of the remedy, could be made the basis of such interposition under the laws of Louisiana, we apprehend it must be by virtue of these provisions relating to "opposition of third parties," and not by reason of the provisions for intervention, strictly so called, the substance of which has been adopted into our practice.

The intervenors rely greatly upon the case of *Speyer* v. *Ihmels*, 21 Cal. 281, which was very similar in its facts to this case, and by which the practice relating to intervention was settled in that state in accordance with their views. In that case the court say: "The provisions of the practice act relating to interventions were not a portion of the system of proceedings in civil cases as originally enacted, but were adopted in 1854 from the laws of Louisiana. In a case like the present, before the introduction of these provisions, and as doubtless may still be done, the proceedings would have been by a separate action, in the nature of a bill in chancery, as in the case of *Heyneman* v. *Dannenberg*, 6 Cal. 376, or by motion to the court, as in the case of *Dixey* v. *Pollock*, 8 Cal. 570; but in the case of *Davis* v. *Eppinger*, 18 Cal. 378, where the facts were like those in this case, it was decided to be a proper case for intervention. Although the

intervenors have not a claim to or lien upon any property which is the direct subject of litigation in this action, they have a lien upon property which is held subject to the results of the litigation, and which would be lost to the intervenors if the original action should proceed to judgment and execution. If the case does not fall within the precise definition of the cases in which intervention takes place, as given in section 659, and as explained in *Horn* v. *Volcano Water Power Co.*, 13 Cal. 62, it is substantially within the object provided for by that section, and, as that is a law only regulating modes of procedure and not affecting rights of property, we think the interpretation given to it in the case of *Davis* v. *Eppinger* should not be changed."

*Davis* v. *Eppinger*, 18 Cal. 379, upon the authority of which the case last referred to was decided, presented the same question, which is disposed of by the court in these words: "If the intervenors have any rights in the premises, we are satisfied that they have pursued the proper remedy. On this point it is only necessary to refer to previous decisions of this court, in which the subject has been fully considered,—*Yuba County* v. *Adams*, 7 Cal. 35; *Dixey* v. *Pollock*, 8 Cal. 570." In the latter case a motion was made by the plaintiff for an order requiring the sheriff to pay over to him the proceeds of goods attached by a writ issued in the suit, notwithstanding they were also subject to prior attachment, issued in the suit of another creditor, which motion was sustained on the ground of irregularities in the first attachment. It is quite clear that this motion was not made under the intervention law, and derived no strength whatever from it; and it may be remarked, in passing, that it is more than doubtful whether such a motion would be entertained in this state. See *Mann* v. *Flower*, 26 Minn. 479.

We are thus thrown back upon the case of *Yuba County* v. *Adams*, 7 Cal. 35, for the foundation of the broad rule of construction which has obtained in California. The facts out of which this case arose are as follows: Alvin Adams, a member of the firm of Adams & Co., brought a suit against his copartners for a dissolution of the partnership and settlement of the partnership affairs, and a receiver was appointed in that suit, who had on deposit with Brumagin & Co.,

bankers, $75,000 of the funds of the partnership; he, as such receiver, holding the certificates of deposit therefor. A tax for county purposes was levied on this fund, which, by the laws of California, was a lien thereon. Many of the creditors of Adams & Co. attached this fund in the hands of Brumagin & Co., and Brumagin & Co. brought an action against Adams & Co., the receiver, and the attaching creditors, to determine their several rights to the fund. In this suit the county of Yuba intervened, claiming a lien on the fund for the amount of the tax assessed against it. For a clear understanding of the facts reference should be made to the suit of *Adams* v. *Haskell*, reported in 6 Cal. 113. The intervention was sustained, but it is to be observed that the proper disposition of the fund was the very matter in litigation upon which the judgment must directly operate, and hence the right of the county which claimed a first lien upon it to intervene was clearly given by the statute. The authority of this case seems, as occasionally happens, to have been extended to a case depending on very different facts; and the broad interpretation given to the statute relating to intervention in California may, we think, be said, as intimated in *Speyer* v. *Ihmels*, to rest on the doctrine of *stare decisis*, rather than on the natural strength and meaning of the language as ably expounded in *Horn* v. *Volcano Water Power Co.*, *supra*.

The subject-matter which the plaintiff presented to the court, by his complaint, for adjudication, was the indebtedness of the defendants to him upon the promissory notes. In a legal point of view the intervenors had no interest whatever in the question of the existence or non-existence of such indebtedness. That was a matter wholly between the plaintiff and the defendants, with which no stranger had a right to interfere. When the judgment was entered against the defendants, the whole original subject-matter of the suit was disposed of; and the case presents the anomaly of a contention still going on, to eventuate in another and independent judgment, leaving the first judgment in full force. This is not intervention to protect an interest in the matter in litigation, but the introduction of a new subject of litigation. It is true, the new subject-matter grows out of the attachment; but a writ of attachment is a part of the remedy, and

has nothing to do with the cause of action. If property is seized by virtue of the writ to which another has a better right, the vindication of such right involves a new and independent judicial inquiry.

The real grievance which the intervenors complain of in this case is an attempt by their dishonest debtors, acting in collusion with the plaintiff, to dispose of all their property, so that they can neither reach the property nor the avails of it. It is unnecessary to enlarge the provision taken from the civil law by construction in order to meet such a case; for we apprehend that no scheme for such an end can be devised, however cunning or occult, for which our Code of Practice—which unites in one form of action the efficacy of the common law and English chancery systems—does not afford a remedy. The creditors in a case like this have their remedy by action against the plaintiff, the defendant, the sheriff, and all parties interested, to have the attached property or its avails applied to the satisfaction of their claims, and its disposition restrained by an injunction until the rights of the parties shall be determined. It is no obstacle that the fraud is sought to be accomplished through the form of judicial proceedings, because the injunction goes, not against the court, but the parties litigant in it. *Mann* v. *Flower*, 26 Minn. 479. Nor is it necessary that the creditors, before instituting such a suit, should proceed to judgment on their claims, and exhaust their remedy thereon by placing an execution in the hands of the sheriff, and waiting to see whether it should be returned unsatisfied. The rule requiring that an execution should be returned *nulla bona* before such an action would lie, is founded on the theory that, until that is done, it does not certainly appear that there is no remedy at law; but it is and ought to be relaxed when it is made to appear that the remedy by execution would be futile, and that the fund sought to be reached would in the mean time be dissipated. *Heyneman* v. *Dannenberg*, 6 Cal. 376. It may be that it would be a convenient and useful practice to determine all questions as to the ownership and right of the avails of property seized on legal process in the suit in which the seizure was made, and to determine all questions of preference between different attaching or execution creditors in one of the suits, under proper regulations, devised to protect the

rights of all parties; but to justify such a practice we are satisfied there ought to be a more distinct expression of the legislative will to that effect than is found in the statute we have been considering. We are of opinion that the motion to dismiss the complaint in intervention should have been granted.

It is, therefore, ordered that the order appealed from be reversed, and the cause remanded with instructions to the court below to dismiss the intervenor's complaint and all the subsequent proceedings thereon.