SMITH *v.* GEORGE T. SMITH MANUFACTURING CO.

CORPORATIONS — PETITION FOR ACCOUNTING — INTERVENTION BY GENERAL CREDITORS.

> A general creditor of a corporation will not be permitted to intervene in a proceeding by a stockholder and creditor under 2 How. Stat. chap. 281, to compel a contribution of capital and an accounting, in the absence of anything tending to show an attempt at a collusive adjustment between the petitioning creditor and the corporation.

Appeal from Jackson; Peck, J. Submitted November 1, 1898. Decided December 13, 1898.

Bill by George T. Smith against the George T. Smith Manufacturing Company, a corporation, and others, stockholders therein, to compel a contribution of capital and an accounting. The George T. Smith Mill Building Company, as a creditor of defendant corporation, petitioned for

leave to intervene. From an order dismissing the petition on defendants' demurrer thereto, petitioner appeals. Affirmed.

*John W. Miner* (*Grove H. Wolcott*, of counsel), for petitioner.

*T. E. Barkworth*, for defendants.

LONG, J. The bill of complaint in this cause was filed by George T. Smith, a stockholder, and also claiming to be a creditor, of the George T. Smith Manufacturing Company, a corporation organized under Act No. 232 of the Public Acts of 1885, and the acts amending the same. It is claimed by the bill that the capital stock of such company was $200,000, consisting of 20,000 shares, of the par value of $10 each, and that the articles of association were executed by Dwight S. Smith (who subscribed for 4,500 shares), Henry H. Smith (who subscribed for 3,000 shares), and the complainant (who subscribed for 4,000 shares), on the 17th day of February, 1897; that the complainant turned over to the company certain patents and designs and appliances in payment of his stock subscription; and that Henry H. and Dwight S. Smith were, by their agreement, to convey to the company real estate of the value of $75,000 in settlement for their respective subscriptions, but that such transfer of real estate was never made. The bill also sets forth that, at the date of the filing of the same, the debts of the corporation amounted to $9,826.57, which did not include the sum of about $1,500 remaining due to complainant for salary and expenses. Complainant charges that defendant Hiram H. Smith purchased of the company 1,000 shares of so-called "treasury stock," at the par value of $10 per share, but that such stock was never paid for, and such defendant is still indebted to the corporation on that account in the sum of $10,000; that defendant Henry H. Smith caused to be entered in the books of the company false and fraudulent entries, amounting to about $10,000, in favor of himself and brother, Dwight S. Smith,

deceased, and against the corporation; that the company has ceased to carry on business, and has sold the aforesaid patents. The bill charges that the report of the company made February 26, 1898, was false, fraudulent, and untrue in fact, and known to be so by Henry H. Smith, one of the directors; and also that Henry H. Smith is attempting to cheat and defraud the company out of its rights and equities as to the aforesaid land, and, by means of said false charges, out of the $10,000 due from Hiram H. Smith for the 1,000 shares of stock assigned to him. The bill asks to have defendants Henry H. Smith and Thomas E. Barkworth account for their official action in the management of the effects and the disposition of the funds of the corporation, and that they be required to account to the corporation and its creditors for all sums of money and the value of all property that they have acquired or transferred or lost or wasted through any violation of their duties as directors and officers, and that a receiver be appointed, and the corporation dissolved.

The George T. Smith Manufacturing Company filed its answer to such bill, neither admitting nor denying the averments of the bill in regard to the sale of the patents mentioned, the land of the value of $75,000, and whether or not Hiram H. Smith was president and a stockholder, as charged, but admits that Hiram H. Smith has never paid the sum of $10,000, to the knowledge of the corporation. Defendant company neither denies nor admits that omissions of entries from the books of the company have been made, or that Henry H. Smith made a fraudulent entry in such books, but avers that the company would not recognize any liability on account of such entry. Defendant alleges that the charge that its annual report was false and fraudulent was not known to the company. Defendant denies that it is necessary, in order to protect creditors and stockholders, that a receiver should be appointed, and also that complainant has any right to such relief. Defendant sets forth a release by the complainant of all claims against the other stockholders of the

company, and authorizing R. M. Newman to collect and settle claims, and cancel and annul a contract with Smith Bros. regarding the organization of the aforesaid company.

The defendants Barkworth, Henry H. Smith, Hiram H. Smith, and Zoe M. Smith, administratrix of the estate of Dwight S. Smith, also filed their answers to such bill. Defendant Barkworth denied that the report of the company was false or fraudulent, or that he had any knowledge that Hiram H. Smith was a stockholder, and averred that said Henry H. Smith had agreed with him that the indebtedness standing to the credit of Smith Bros. ($10,000) should not be considered until all the indebtedness to creditors had been paid.

The answer of Henry H. Smith admits that complainant conveyed certain patents, etc., to the company, but denies that the same were received in full payment of his stock, and insists that the land in question had been conveyed by himself and Dwight S. Smith to the Jackson Vehicle Company at the time articles of association were executed; also denies that there was any agreement by which the land should be conveyed to the corporation in consideration of the stock issued to him and his brother. He also denies making any fraudulent entries in the books of the concern, and that Hiram H. Smith was a stockholder therein.

Hiram H. Smith, by his answer, denies that he purchased any stock in the company, or that he is indebted to it, and claims that the land mentioned is the property of the Jackson Vehicle Company.

The defendant Zoe M. Smith neither admits nor denies the averments of the bill, and leaves complainant to his proofs.

On the 21st day of April, 1898, the George T. Smith Mill Building Company, of Cleveland, a corporation, by David Morison, its president, filed its petition in this cause, setting forth therein that it was a creditor of the George T. Smith Manufacturing Company, holding two notes of

such company, each for the sum of $3,756, dated March 18, 1897,—one payable on or before one year from date, and the other payable on or before two years from date, with interest at 6 per cent.   These notes were indorsed by Smith Bros. (composed of Henry H. and Dwight S.), and by George T. Smith.   It is asserted in the petition that the petitioning company became aware of the charges of fraud and mismanagement from the bill of complaint in this cause, and charges that the land of the value of $75,000 was contributed by Henry H. and Dwight S. Smith in payment of the stock issued to them, and that Hiram H. Smith was a stockholder of the company, holding 1,000 shares, for which he was indebted.   The petition sets forth that the debts of the company amount to about $22,000, and the total personal estate to about $14,000, and that, if such real estate and indebtedness could be recovered, such company would be solvent.   Petitioner claims that its rights as a creditor (such notes and interest thereon, so far as due, being wholly unpaid) entitle it to be heard in the case, and asks that it may be made a party complainant, and that it may have the benefit of all allegations in the bill, and that defendants may make further answer to the petition, and that Hiram H. Smith may be decreed to pay to the George T. Smith Manufacturing Company the sum of $10,000 which he owes for stock, and that the said land may be decreed to be the property of such company.

To the petition defendants entered their general demurrer.   The petitioner moved to strike such demurrer from the files for irregularity, but such motion was waived. Hiram H. Smith, one of the defendants, died on the 15th of May, 1898, and, on July 9th following, an order was made reviving the cause against his administrators; and, on the same date, a decree was entered sustaining the demurrer and dismissing the petition, from which decree the petitioner appeals.

It is claimed that the statute gives the petitioner the right to intervene.   This is the only question involved. Chapter 281, 2 How. Stat., in addition to the general juris-

diction of courts of chancery over matters concerning corporations, gives authority to such courts to entertain bills and petitions in behalf of the State under the direction of the attorney general; also bills in behalf of any creditor of a corporation, or any director, trustee, or officer having general supervision of the affairs of a corporation, or any stockholder or judgment creditor. Section 8150, 2 How. Stat., being a part of the same chapter, prescribes the relief to be given upon a proper application by any person entitled to file a bill or petition. It is therefore contended by counsel for the George T. Smith Mill Building Company, which seeks to intervene, that if, under this statute, any creditor, whether a judgment creditor or not, may file a bill or petition to compel the officers of a corporation to account, and for other purposes mentioned in the statute, then such creditor is entitled to intervene in a proceeding such as this.

In *Riverside Iron Works* v. *Wayne Circuit Judge*, 100 Mich. 124, the petitioner sought to intervene, and answer and file a cross-bill resisting a petition filed under this same chapter. The petition was denied in this court. It was said that petitioner could gain no advantage over the other creditors, and that any equities sought to be reached would not be disturbed by the sequestration; that the petitioner was entitled to such relief as the parties filing the bill asked for. In the present case, if the petitioner is allowed to intervene, then any general creditor might be so permitted. Whatever may result from the original proceedings will belong to the creditors. The petitioner has not shown that it has any other or greater rights than any other creditor, or any specific right in the thing which forms the subject of the controversy. General creditors are not permitted to intervene in such cases. *Horn* v. *Volcano Water Co.*, 13 Cal. 62 (73 Am. Dec. 569); *Welborn* v. *Eskey*, 25 Neb. 193; *Lewis* v. *Harwood*, 28 Minn. 428. See, also, *Heap* v. *Heap Manfg. Co.*, 97 Mich. 147. We think the statute cannot have the construction contended for. Such construction would permit all creditors to intervene, and might cause endless

delays and confusion in the settlement of the questions in litigation.   We do not say that a case might not arise in which a general creditor would be permitted to intervene to prevent a collusive adjustment between the petitioning creditor 'and the corporation, but no. such showing is made here.

The order below must be affirmed.

The other Justices concurred.