EMERN McALLEN v. FRED A. HODGE and Others.[1]

April 29, 1904.

Nos. 13,834—(30).

### Alienation of Affection—Intervention.

A divorced husband and his former wife entered into a written agreement, whereby, in consideration of $7,000 cash and $3,000 secured, she released and discharged all claims and causes of action that she had or claimed to have against any and all persons for the alienation of her husband's affections, and agreed not to bring, or cause to be brought, any actions or proceedings against any person for the recovery of damages on account thereof. In an action subsequently brought by her against certain persons to recover damages for the alienation of her husband's affections, *held*, the former husband may intervene and interpose the contract as a defense to the action.

Action in the district court for Pine county to recover from defendants, Fred A. Hodge and Carrie E. Hodge, $30,000 for alienation of the affections of plaintiff's husband. Peter W. McAllen, the divorced husband, intervened, pleading the contract with plaintiff referred to in the opinion. From an order, Williston, J., striking out his complaint of intervention, intervenor appealed. Reversed.

*John F. Fitzpatrick,* for appellant.

*Erwin & Mead,* for respondent.

LEWIS, J.

It appears from the complaint that, as a result of interference on the part of defendants with plaintiff's domestic relations, she and her husband became separated, and finally divorced, and this action was brought by her to recover damages for the alienation of her husband's affections.

Before the case came on for trial, the divorced husband, Peter McAllen, served a complaint in intervention, which alleged that plaintiff and he were married in 1894, continuing husband and wife until December 28, 1901, when they were duly divorced by the judgment of

---

[1] Reported in 99 N. W. 424.

the court; that, upon the date of entry of such judgment, plaintiff executed and delivered to intervenor an instrument in writing which set forth that in consideration of the payment to her of $7,000 in cash, and the execution and delivery of a certain bond for the further payment of $3,000, she released and discharged all claims for damages and causes of action of every nature whatsoever which she had or claimed to have against any person or persons on account of the alienation of the intervenor's affections. The writing contained a specific agreement on her part that, in consideration of these payments, she would not bring, or cause to be brought, any action or suit at law or in equity, or any proceeding, against any person or persons, for the recovery of damages or otherwise, on account of the alienation of the intervenor's affections.

The complaint in intervention further alleges that the $7,000 was paid, and the bond executed and delivered; that the intervenor and defendant Fred A. Hodge were then, and for a number of years prior to the execution of the instrument had been, associated in business at Pine City; that for more than a year before that time plaintiff had been circulating statements of a scandalous character about the intervenor and defendants; that the same were malicious and false, and that plaintiff continued to threaten to bring suits against defendants and the intervenor, based upon such statements and charges; that, by reason of the defamatory nature of such charges, and plaintiff's threat to continue the same, business relations of intervenor with defendant Hodge were being seriously jeopardized, and, in order to put a stop to such statements, the intervenor paid plaintiff $7,000, and such was the consideration of the aforesaid agreement; that, notwithstanding such 'contract, plaintiff commenced this action against the defendants, based entirely upon false and malicious charges, with the intention of breaking up and ruining the business of intervenor, and his relations with defendant Hodge, who threatens to discontinue such business relations. It is further alleged that the intervenor has no other adequate remedy at law, and that he will suffer hardship, loss, and injury if plaintiff be allowed to proceed with this action.

Upon motion by plaintiff, the trial court struck out the complaint in intervention; and, as we understand the decision, it was upon the

ground that the intervenor's remedy, if any, was upon the contract, and upon the further ground that the intervenor had no legal interest, of a direct and immediate character, in the determination of the action pending.

That part of the statute (G. S. 1894, § 5273) now necessary to consider reads:

> Any person who has an interest in the matter in litigation, in the success of either of the parties to the action, or against either or both, may become a party to any action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, or either of them, either before or after issue has been joined in the cause, and before the trial commences. The court shall determine upon the issues made by the intervention at the same time that the issue in the main action is decided, and the intervenor has no right to delay.

In the case of Bennett v. Whitcomb, 25 Minn. 148, the following rule with respect to intervention was formulated: "The interest essential to the right of intervention, under Laws 1876, p. 69, c. 50, must be an interest in the matter in litigation in the action, and of such a direct and immediate character that the intervenor will either gain or suffer loss by the direct legal operation and effect of the judgment that may be rendered therein." In that case the plaintiff brought an action to reform a power of attorney and a deed by correcting the description of certain lands. The intervenor based his right of intervention upon the fact that he was the owner in fee, according to the corrected description, as purchaser at a tax judgment sale, and a pretended redemption therefrom, and his application was denied upon the ground that he showed no claim under either of the parties to the action; that he did not connect himself as a party to any of the conveyances or instruments sought to be corrected, and that it was of no concern to him whether the alleged mistakes therein were corrected or not; that he was an utter stranger to the action; and that he would not derive any imme-

diate gain or suffer any loss by the direct legal operation and effect of the judgment entered therein.

The same rule is reiterated in Lewis v. Harwood, 28 Minn. 428, 10 N. W. 586. In that case an action was begun to enforce the collection of certain promissory notes, and certain creditors attempted to intervene and enforce their demands against defendants upon the ground that the notes were void, as having been given without consideration. In the opinion the court lays stress upon the principle already announced, that the intervenors had no interest whatever in the subject-matter of the suit, viz., the indebtedness claimed to exist upon the promissory notes, and that the intervention introduced a new subject into the litigation.

Under this rule, in Wohlwend v. J. I. Case Threshing-Machine Co., 42 Minn. 500, 44 N. W. 517, the court recognized the right of intervention by a mortgagee in an action brought by the owner to recover damages for the negligent destruction of personal property, and it was stated in the opinion that the interest of the intervenor in the property was of such a character that it must necessarily either gain or lose by the direct legal operation and effect of the judgment in the action. In Becker v. Northway, 44 Minn. 61, 46 N. W. 210, it was held that, in an action against a surety alone, the principal debtor might intervene for the purpose of defeating a recovery by plaintiff, and for that purpose might set off a debt due him from the plaintiff. Mr. Chitty states (2 Chitty, Gen. Pr. 492) that intervention was unknown to the courts at common law and equity, but that it was admitted in practice in the ecclesiastical courts, and the rule is defined thus: "* * * If any third person consider that his interest will be affected by a cause which is depending, he is not bound to leave the care of his interest to either of the litigants, but has a right to intervene or be made a party to the cause, and take on himself the defense of his own rights, provided he does not disturb the order of the proceedings."

In Lewis v. Harwood, supra, it is noted that our statute is probably derived from the Louisiana code. So far as we are aware, the adjudicated cases in this country with respect to the right of intervention have been those in which there was involved some form of property, or in which the intervenor claimed to have a pecuniary interest; and, in adopting the rule in the cases referred to in this court, only such ques-

tions were under consideration. In New York, in an early case (Kelsey v. Murray, 28 How. Pr. 243), the right of intervention was limited by the statute to suits involving real or personal property; and in some states, in the absence of statutory provisions, the courts, in practice, have adopted the rule of our own court. Whitman v. Willis, 51 Tex. 425.

In the case before us the subject-matter of the suit is not real or personal property, but is an action for damages, and the interest of the intervenor is not of a pecuniary nature. All that is set out in his complaint with reference to his business connections with defendants must be disregarded. The question is, has he shown himself to have such an interest in the litigation as to entitle him to intervene, within the meaning of the statute, although his interest is not pecuniary? In the first place, the agreement entered into between the intervenor and his former wife is a valid and enforceable contract. In consideration of $10,000 paid and to be paid, she released all rights of action which she might have against any person, growing out of the interference by any person with her domestic relations, and agreed that at no time would she commence any suit against any person, based upon such interference. If a legal contract, then there is a remedy for its violation. The remedy is not adequate if limited to an action at law for damages, for they would be impossible of computation. Undoubtedly the intervenor is entitled to equitable relief, and in an original proceeding could enjoin the plaintiff from prosecuting the action against defendants; and, if that be true, the same result may be accomplished by the shorter method of filing a complaint in intervention, if the language of the statute reasonably conveys such intent.

Bearing in mind the object of the code, the effort made to simplify the method of procedure and avoid multiplicity of suits, and the tendency of the courts to carry into effect such purpose, we are hardly warranted in limiting our statute upon the subject of intervention strictly to those cases which involve some form of real or personal property, and the intervenor's interest to that of a pecuniary interest only. In this case the intervenor certainly has an interest in the subject-matter of the litigation. He is interested in the success of defendants, and while it may not be of such direct and immediate character that he will either gain or lose by the legal operation and effect of the judgment, in

a pecuniary sense, still, he has an interest, growing out of the contract, in preventing such litigation, and protecting himself from public criticism. For that purpose he may unite with defendants in resisting plaintiff's claim, and, in so doing, it does not follow that he will delay the trial of the main action.

In the absence of language to the contrary, we are of the opinion that in a case of this kind the intervenor was entitled to file his complaint. Although the complaint in intervention is apparently based upon the theory of equitable relief, and the prayer is for injunction, looking to the substance, it amounts to no more than a pleading of the contract.

Order reversed.