BALLAINE v. ALASKA NORTHERN RY. CO.

(Third Division. Valdez. July 16, 1917.)

No. S/91.

1. PARTIES ⬩40(3)—INTERVENTION—UNITED STATES.

The defendant sold all its stock and property to the United States. Subsequently it brought a suit to establish a trust in certain other property claimed by the plaintiff. The suit was decided in favor of the plaintiff, who thereupon brought this suit for damages against the defendant, seeking to obtain a lien of judgment against the property so sold to the United States. The United States intervened in this action and pleaded the facts in bar to plaintiff's demand. *Held*, on demurrer by plaintiff, the United States had a right to intervene having a vital interest in the matter in litigation. A judgment against the railroad company would be in substance and effect against the United States,

⬩See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as it purchased the property which it is sought to hold by the lien of judgment.

2. UNITED STATES &#9758;55—ENGAGING IN PRIVATE BUSINESS.

The United States purchased all the capital stock of the Alaska Northern Railway Company, and took charge of its property and continued its business. On a suit against the company, on demurrer, *held,* if the Alaska Northern Railway Company entered into commercial or transportation business, it might be deemed to have abandoned its sovereign capacity and be treated like any other corporation.

3. UNITED STATES &#9758;5—ENGAGING IN PRIVATE BUSINESS.

When the United States enters into commercial business, it abandons its sovereign capacity and is to be treated like any other corporation (following Bank of United States v. Planters' Bank, 9 Wheat. 904, 6 L. Ed. 244; Salas v. United States, 234 Fed. 842).

4. ESTOPPEL &#9758;68(2)—CLAIM OR POSITION IN PREVIOUS ACTION.

Where, in the sale of all its capital stock and property to the United States, the Alaska Northern Railway Company reserved its then accrued claim and right of action against the plaintiff, and afterward brought suit on it and failed to recover, all of which was well known to and approved by the plaintiff, he cannot thereafter hold the property so sold to the United States liable for any judgment which may be recovered by him against the railroad company.

5. UNITED STATES &#9758;78—TORTS.

The government is never deemed guilty of a tort, and is not responsible for the tortious acts of its officers or agents generally, either of malfeasance or of nonfeasance, although apparently committed for its benefit, while engaged in the discharge of official duties, and the United States have not by any statute permitted themselves to be sued for the torts of their officers.

On April 29, 1915, the Alaska Northern Railway Company, defendant herein, commenced an action against plaintiff, Frank L. Ballaine, and his brother, John E. Ballaine, and others, claiming that the said plaintiff and his brother held title to a large number of lots in the town of Seward, Alaska, in trust for the said Alaska Northern Railway Company. Said suit terminated in favor of the plaintiff herein and his brother, John E. Ballaine, whereupon two separate actions were brought, one by this plaintiff against the Alaska Northern Railway Company to recover the sum of $150,000 damages for prosecuting said former action maliciously and without prob-

&#9758;See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

able cause, and another action (S/92) brought by John E. Ballaine against the Alaska Northern Railway Company to recover the sum of $300,000 damages upon the same grounds.

Under and by virtue of an act of Congress, entitled "An act to authorize the President of the United States to locate, construct and operate railroads in the territory of Alaska, and for other purposes," which said act was approved March 12, 1914 (38 Stat. 305, c. 37 [U. S. Comp. St. 1916, §§ 3593a–3593d]), Franklin K. Lane, Secretary of the Interior of the United States, acting by authority of the President of the United States and for and on behalf of the United States, entered into a written agreement, on the 6th day of April, 1915, with certain officers and agents of the Alaska Central Syndicate and with certain officers, agents, and trustees of the Alaska Northern Railway Company whereby the United States acquired all the property, stocks, bonds, and assets, of every kind, of the said Alaska Northern Railway Company, except any right of action or claim which said Alaska Northern Railway Company might have against any person or persons whosoever with reference to the title to said Seward town site, otherwise known as "Surveys No. 726 North and South"; and in a supplementary agreement entered into on the 12th day of August, 1915, between said Franklin K. Lane, Secretary of the Interior of the United States, acting by authority of the President of the United States, and the said representatives of the said railway company, any such claim or right of action was expressly excluded from the purchase made by the United States.

The said action of the Alaska Northern Railway Company against Frank L. Ballaine and John E. Ballaine was tried at Seward on the 1st day of November, 1915, by this court. Both Frank L. Ballaine and John E. Ballaine were present at the trial of said action and knew of the facts above stated, to wit, that at the time the United States of America was the real owner of all the property, stock, bonds, and assets of said Alaska Northern Railway Company, except the claim against them on account of said lots and town site, which had been expressly reserved to the said Alaska Northern Railway Company, or its agents, trustees, or representatives, and in that suit said John E. Ballaine introduced as part of his testimony (Exhibit 1 to testimony of John E. Ballaine) a letter

from Franklin K. Lane, Secretary of the Interior, dated September 21, 1915, as follows:

"Dear Mr. Ballaine: In response to your written request of September 16th, I advise you that the United States has no interest in the suit brought by the Alaska Northern against yourself and your brother, involving the Seward town site. Any moneys or advantage that may be recovered by the plaintiff in that suit would not come to the United States. Under the terms of the contract by which the government is acquiring the Alaska Northern securities, the right to this suit and its proceeds was expressly reserved to and for the sole benefit of the Canadian bondholders who made the sale. The suit was commenced before the government acquired control of the Alaska Northern.

"Cordially yours,                    [Signed]   Franklin K. Lane.
"Mr. John E. Ballaine, Seattle, Washington."

The United States of America was granted leave to intervene pursuant to section 873, Compiled Laws of Alaska, which provides:

"Sec. 873. Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter of litigation, in the success of either of the parties or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint setting forth the ground upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared, and upon the attorneys of the parties who have appeared, who may answer or demur to it as if it were an original complaint."

Said complaint in intervention sets out the above-named facts, that the United States paid all the sums of money mentioned in said agreements, and it is now the owner and holder of all the property of said Alaska Northern Railway Company, and asks that plaintiff's complaint be dismissed.

It is further alleged in said complaint in intervention that the said Alaska Northern Railway Company is now in charge of the officers and agents of the United States of America and is entirely controlled by them for and on behalf of the United States of America.

It thus appears that the United States has permitted the said Alaska Northern Railway Company to continue its corporate existence, for just what reasons of public policy does not

appear, and that the United States is in the actual possession, control, and management thereof.

The plaintiff demurs to the complaint in intervention upon the following grounds:

"That it appears upon the face of said complaint in intervention—

"First. That said intervener is without legal capacity to become a party to said controversy, in that said complaint in intervention alleges said intervener to be a stockholder of the defendant corporation in said action, owning the stocks and bonds or a majority thereof, in said corporation, and claims under and in privity with said corporation, and said intervener is not such a party to or interested in said action as contemplated by the provisions of section 873, Comp. Laws Alaska; said intervener being identified in interest with said defendant corporation.

"Second. That the complaint in intervention in said cause does not state facts sufficient to constitute a cause of action against plaintiff, in that said action as instituted by plaintiff, is an action of tort, wherein plaintiff seeks to recover a judgment for damages against the defendant corporation, and the question of the ownership of the assets of said defendant corporation is not placed in issue by plaintiff's complaint."

L. V. Ray, of Seward, for plaintiff.

W. N. Spence, of Valdez, and W. A. Mundy, of Portland, Or., for defendant.

BROWN, District Judge. As to the first ground of demurrer, it seems clear that the United States, the intervener, has a right to intervene as having a vital interest in the matter of litigation and in the outcome of the action. If any judgment should be procured by plaintiff against said Alaska Northern Railway Company, it would be in substance and effect a judgment against the United States.

In the case of Robinson v. Crescent City M. & T. Co. (Wegner, Intervener), a California case, reported in 93 Cal. 316, 28 Pac. 950 (section 387 of the California Code of Civil Procedure is identically the same as the Alaska statute on intervention), it was held, in an action for trespass on land, that a person could intervene where he claimed a grant of a right of way through the land and alleged the acts complained of were performed by defendant while employed by him to construct such right. See, also, McAllen v. Hodge (McAllen, Intervener), 92 Minn. 68, 99 N. W. 424; Wohlwend v. J. I. Case Threshing M. Co., 42 Minn. 500, 44 N. W. 517; Stich

v. Dickinson, 38 Cal. 608; Kinney v. Reid I. Co., 57 App. Div. 206, 68 N. Y. Supp. 325; Feinburg v. Amer. Surety Co., 33 Misc. Rep. 458, 67 N. Y. Supp. 868.

The real question on the merits in this case is: Can the United States be held liable in damages in the sum of $450,-000 (claimed by plaintiff and by John E. Ballaine in case No. S/92), or in any other sum, for or on account of the injuries complained of by said plaintiffs?

The United States cannot be sued for tort and only in the Court of Claims upon contract.

"The government is never deemed guilty of a tort, and is not responsible for the tortious acts of its officers or agents generally, either of malfeasance or of nonfeasance, although apparently committed for its benefit, while engaged in the discharge of official duties, and the United States have not by any statute permitted themselves to be sued for the torts of their officers." 39 Cyc. p. 748.

Should the plaintiff be permitted here to do indirectly what it is conceded he cannot do directly? He could not bring suit directly against the United States, even though the United States had, through its officers or agents, committed some tortious act to his injury; but here the United States has never injured him at all, but, on the contrary, by purchasing the said railway property has given a very considerable value to the lots in said Seward town site, without which they would have little, if any, value. Plaintiff knew when he was being sued by the Alaska Northern Railway Company, that the United States had expressly excluded any claim the Alaska Northern Railway Company might have against the plaintiff. The United States was not prosecuting said action, and in no manner committed any act of which plaintiff can complain.

As was said in the case of Gibbons v. United States, 8 Wall. (75 U. S.) at pages 274 and 275, 19 L. Ed. 453:

"The supposition that the government will not pay its debts, or will not do justice, is not to be indulged. Still less can it be made the foundation for a claim of indemnity against loss incurred by an individual by acting on such a suggestion. * * * The language of the statutes which confer jurisdiction upon the Court of Claims excludes by the strongest implication demands against the government founded on torts. The general principle, which we have already stated as applicable to all governments, forbids, on a policy imposed by necessity, that they should hold themselves liable for unauthorized wrongs inflicted by their officers on the citizen, though occurring while engaged in the discharge of official duties."

The plaintiff cites the case of Thull, Adm'r, v. Panama R. R. Co., from the Supreme Court of the Canal Zone, No. 112, decided May 27, 1913, upon appeal from the circuit court of the Second judicial circuit, opinion by H. A. Gudger, C. J., a photographic copy of which opinion is submitted in the plaintiff's brief. The Panama Railroad Company occupies about the same status as the said Alaska Northern Railway Company. The United States took over said Panama Railroad Company by and through the Isthmian Canal Commission. All the stock of the said Panama Railroad Company was purchased and owned, and the road controlled, by the United States government. The Isthmian Canal Commission, as the agent of the United States government, was in general charge of the building of the canal, and was operating said railroad. In operating a train the engine was derailed, and the engineer in charge of the train instantly killed. The court says:

"The Panama Railroad Company is a corporation doing business in the Canal Zone, and, as such, is liable to be sued in the courts for alleged injuries, even though, as a matter of fact, its stock is owned and the road controlled by the United States government. So long as the railroad retains its original corporate charter and exercises rights and privileges under the same, it is amenable to the law and subject to the jurisdiction of the courts. On the contrary, the Isthmian Canal Commission is the agent of the United States government, and, as such, cannot be sued in the courts, except to the extent and in the manner that may be provided by law. There is no provision authorizing a suit directly against the United States government, but there is a provision which relates to accidents among the commission employés, and provides that dependent persons on those injured may claim and receive certain compensation. In the case before us this was claimed and paid."

The case is decided in favor of the defendant upon the ground that the Isthmian Canal Commission was in effect a lessee of the said Panama Railroad, and, being therefore primarily liable to the employé, the lessor was not liable.

The plaintiff also cites the case of Salas v. United States, from the Circuit Court of Appeals, Second Circuit, 234 Fed. 842, 148 C. C. A. 440. This is a case where Salas and others were charged with conspiracy to defraud the United States under section 37 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [U. S. Comp. St. 1916, § 10201]), in conspiring with one Burke, manager of the commissary depart-

ment of the Panama Railroad. The court says (234 Fed. on page 844, 148 C. C. A. at page 442):

"The theory of the United States is that the Panama Railroad Company is a governmental department, and Burke, though on the pay roll of and paid by that company, was an officer of the United States. The trial judge so held as matter of law. The Isthmian Canal Commission was an agency of the United States under the supervision of the War Department, having complete control of the building of the canal. The United States was also the owner of the whole capital stock of the railroad company, absolutely dominating it and solely interested in its profits or losses. The government, however, continued the original corporate organization of the railroad company for its own purposes, among others to avoid the restrictions of certain laws of the United States applicable to the commission. Accordingly there was created a department called the 'subsistence department,' composed of the labor, quarters, and subsistence department of the commission, which furnished all food supplies to the employés on the Isthmus and the commissary department of the Panama Railroad Company, which bought, carried, and furnished all other merchandise and supplies. Burke was the manager of the latter. When the United States enters into commercial business it abandons its sovereign capacity and is to be treated like any other corporation. Bank of United States v. Planters' Bank, 9 Wheat. 904, 6 L. Ed. 244. Although it absolutely owns the Panama Railroad Company and is the only person profiting or losing by its activities, still the railroad company sues and is sued just like any other corporation, in its own name. If this tobacco had been deficient in quality, the railroad company could have sued Salas to recover the damages, and if it had not been paid for Salas could have sued the railroad company for the price. Therefore we are of opinion that the combination proved did not defraud or intend to defraud the United States."

The United States was represented in the operation and construction of the government railway in Alaska by a board known as the Alaska Engineering Commission, similar to the Isthmian Canal Commission. If the case at bar were one brought against the Alaska Northern Railway Company for an injury done by said railway company while being operated, the situation would then be similar to that existing in the two cases last above quoted and it might possibly be that said Alaska Northern Railway Company, if it had entered into commercial business or transportation business, might be deemed to have abandoned its sovereign capacity and be treated like any other corporation, as said in Salas v. United States, supra. Although if the road were actually being operated by the Alaska Engineering Commission, and some one was injured, it

might be that under the rule announced in the case of Thull, Adm'r, v. Panama R. R. Co., supra, the action could not be maintained, for the reason that the United States, or the Alaska Engineering Commission, its agent, would be the lessees of the road, and therefore not liable in an action on tort. But the case at bar is entirely different. The plaintiff is not claiming, and cannot claim, that he was ever injured by the United States, from whom a recovery here is sought to be had, although it be indirectly. It is not claimed that the Alaska Northern Railway Company was being operated, and therefore the United States had entered into commercial and transportation business, and laid aside its sovereign capacity, and while so doing had injured plaintiff. The United States had simply acquired the railway property for a useful and important public purpose, and the plaintiff had full knowledge that, in such transaction of purchase, the United States expressly disclaimed, and refused to purchase the claim upon which the plaintiff and his brother were sued, and they knew this at the time that case against them was tried, and by proper action, had they sufficient reason to believe that the action was malicious and without probable cause, they could have taken some steps to secure themselves from loss and injury. Their remedy now, if they have any, would seem to be against the former officers, agents, trustees, or representatives of the said Alaska Northern Railway Company, who undertook to prosecute such claim concerning the town lots against them, for their benefit, and not for the benefit of the United States.

It is not specifically alleged in the complaint in intervention that the plaintiff, Ballaine, had knowledge and notice of the reserving of said right of action by the Alaska Northern Railway Company or its representatives, and that the United States, on purchasing said railway property, expressly excluded any claim against the Ballaines on account of the lots in said Seward town site, and the United States, intervener, will be permitted to add to said complaint in intervention, at the end of the second paragraph thereof, by interlineation, the words "of which facts plaintiff had due notice." Such amendment is purely formal, and plaintiff is in no wise prejudiced thereby, and no ground of demurrer is assigned by reason of failure to make such allegation.

I am further of the opinion that the setting out in this opinion of the letter from Secretary of the Interior Lane to

John E. Ballaine is proper under the general principle of judicial notice, and to aid in the full determination of the questions involved in this action.

The demurrer will be overruled.