PETER REARD et al., Appellees, v. SAMUEL C. FREIDEN et al., Appellees; A. B. BEALL, Intervener, Appellant.

PARTIES: Right to Intervene. A creditor whose claim has not
1   been reduced to judgment, and is not lienable, has a right to intervene in an adverse action against his *insolvent* debtor, whose assets have wholly passed into the hands of a trustee for final voluntary liquidation, when it appears to a *certainty* that the intervening creditor will fall short of collecting his claim, in the same ratio in which the plaintiff in the action succeeds in depleting the debtor's already insufficient assets.

PRINCIPLE APPLIED: A stockholder of a banking corporation brought action against the corporation and against a former officer thereof and against a trustee of the bank's property, and, on the ground of fraud, prayed that his stock be cancelled. and that he have judgment for the amount paid therefor, to wit, $15,000. All defendants joined issue on said petition. A creditor of the bank, on his own part and on the part of all other creditors, filed a petition of intervention adverse to the stockholder's petition. A demurrer to the petition of intervention was sustained, and thus it appeared:

That the bank and the stockholders, other than the plaintiff stockholder, were insolvent; that the bank's officers had abandoned all management over its affairs; that all the bank's assets had wholly passed into the hands of said trustee for final

voluntary liquidation; that intervener's claim, though admittedly correct, was a simple contract claim, and to first reduce it to judgment would enable the bank's assets to be placed beyond the reach of the creditors; that the bank was in such condition that no good-faith defense would be made to said stockholder's action, unless intervener was permitted to defend.

*Held*, said creditor had the right to intervene.

PARTIES: Delay by Reason of Intervention. Intervention should not be refused on the plea that it would delay the action, when the delay, if any, has been fully acquiesced in.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

·OCTOBER 25, 1918.

SUIT to rescind the purchase of stock in the defendant bank, and to cancel a note executed therefor. A. B. Beall, for himself as creditor, and for all other creditors, filed a petition of intervention. Plaintiff demurred thereto, and moved that the same be stricken from the files. The court sustained both the motion and the demurrer, and from this ruling intervener appeals.—*Reversed.*

*George A. Gorder,* for appellant.

*Edwin J. Stason, E. A. Burgess,* and *T. F. Bevington,* for appellees.

LADD, J.—I. The claim of Peter Reard, alleged in the petition, is that the defendant Samuel C. Freiden, director and president of defendant bank, induced him, by fraudulent representations, to purchase $63\frac{1}{4}$ shares of stock in the Sioux City Trust and Savings Bank, at the price of $15,000, for which he gave Freiden his promissory note; that the certificate of shares was issued to him for and instead of those held by Freiden; that said Freiden afterwards turned over said note to Ralph A. Oliver, as trustee, for the benefit of

Freiden and the bank, and that it was handled by said Oliver under a certain written agreement; that Oliver took the same with knowledge of the infirmity inhering therein; that, upon discovering that the representations of Freiden were false and fraudulent, Reard tendered to both Oliver and Freiden the return of the stock, and demanded the surrender of his note. The prayer was that said certificate of stock, which was brought into court, be cancelled, and that his note be returned.

The defendant Freiden put all these allegations in issue, except that with reference to his official position and that he had transferred the note to Oliver.

The bank and Oliver first filed an answer like that of Freiden, though admitting the demand on Oliver, and alleging that Freiden had turned his property over to Oliver, as trustee, to be disposed of in pursuance of a contract between them. Later on, Oliver filed an amendment to the answer, alleging that the bank had gone into voluntary liquidation; that its assets had been turned over to the Northwestern National Bank of Sioux City, in pursuance of a contract; that the makers of a large number of the notes held by the bank had asserted their invalidity, because of oral arrangements with Freiden; and that, while the invalidity thereof was denied, yet, if they were found invalid, the bank would be insolvent; that the transaction on which the petition was based was personal between the parties thereto, and the bank was in no manner connected therewith; that bank examiners, upon discovering the condition of the notes heretofore referred to, demanded that these be taken out of the assets of the bank, and it was arranged that Freiden should transfer his property, including the note of Reard, to said Oliver, as trustee, which was done, said trustee undertaking to reduce said property to cash, and therefrom pay for and take over from the bank the notes complained of. He also alleged that the estate of Reard was estopped from assert-

ing that he was not a stockholder in said bank. The bank also amended the answer by making the same allegations as did Oliver, except as to the transfer of Freiden's property.

It is to be observed that the defenses interposed are (1) general denial, (2) acquiring the note for valuable consideration without notice, and (3) estoppel. Thereupon, Beall filed an amended and substituted petition of intervention, in the first division of which he alleged an indebtedness of $18.75 of the bank to him on open account; that he was acting for himself and all other creditors of the bank; that all its property had been transferred to the Northwestern National Bank, to be handled for its benefit and that of its stockholders; that it ceased to do business March 1, 1917, and has since been deserted by its officers and directors, none of whom give any attention to its affairs; that it is unable to discharge its liabilities; that its capital stock is somewhat impaired, and it is insolvent; that the transaction of Freiden with plaintiff was personal, and in no manner connected with the bank; that plaintiff is estopped, as pleaded by defendants, and especially as to intervener, who extended credit to the bank in reliance on Reard's connection therewith; that intervener knows nothing of the financial condition of stockholders, other than the estate of Reard, and so alleges that they are insolvent; that intervener is without remedy at law, and the delay in reducing the creditor claims to judgment would be fatal to the relief herein prayed, and the success of plaintiff would deprive the intervening creditors of property out of which to satisfy their claims; that the assignment to the Northwestern National Bank was limited in favor of a part only of those entitled to share the assets.

In Division 2, an indebtedness of the bank to one Schmidt, of $125, and the assignment thereof to plaintiff, is alleged; and the prayer is that:

"Wherefore, plaintiff in intervention prays that the

prayer of the plaintiff Peter Reard and his executrix, for rescission of the subscription and cancellation of the stock in said Sioux City Trust & Savings Bank, held by the said Peter Reard, and for money judgment or establishment of a money trust fund against the said bank and its codefendant, Oliver, be denied; that all of the creditors, stock and shareholders in said bank, and all persons whomsoever interested, directly or indirectly, in this litigation, be impleaded herein and brought before this court in this cause; that a hearing be had, in which the true financial condition of said bank be ascertained and adjudged; that the amount to which each creditor who may appear herein may be entitled, and the individual liability of each and every stockholder of said bank, be determined and adjudged; and that, thereupon, judgment and decree be entered in favor of each creditor, to the amount which he may prove to be justly due and owing to him, and against each and every stockholder of said Sioux City Trust & Savings Bank, including the said Anna Reard, executrix, to the extent of the lawful share necessary to be contributed by them and each of them, in order to liquidate the affairs and pay and satisfy the just debts and obligations of said bank; and that an officer of said Northwestern National Bank, or such other person as to the court may be deemed advisable, be appointed as receiver of the said defendant Trust Bank and of its assets and resources; that the said Northwestern Bank be decreed and required to turn over to said receiver all of the property and assets of said defendant Trust Bank now in its possession or under its control; that said receiver be empowered and required to liquidate, within a reasonable time, to be fixed by this court, said Trust Bank and its affairs, to collect its assets and property, by judicial proceedings or otherwise, and to collect from the solvent shareholders such legal amount as may be necessary to pay the just debts and obligations of said defendant Trust Bank. for judgment in

favor of this plaintiff in intervention, A. B. Beall, and against the said Trust Bank, for ($143.75) one hundred forty-three and 75/100 dollars, together with interest thereon from October 1, 1916, for such other and further relief in the premises as may be just and equitable, and for the costs of this proceeding."

The plaintiff demurred to this petition, on the ground that the facts stated did not entitle the intervener to the relief prayed, and moved that the petition be stricken from the files, for that: (1) No basis for intervention appears therein; (2) it prays for the appointment of a receiver, without having a claim established by judgment or otherwise, or showing any ground therefor; (3) it affirmatively shows that delay would be occasioned thereby; and (4) it fails to show that the petitioner has any interest in the matter in litigation. Both the demurrer and the motion to strike were sustained.

2. PARTIES: delay by reason of intervention.

These rulings may be considered together; and first, the alleged delay occasioned by the filing of the petition of intervention. Section 3595 of the Code provides that:

"The court shall determine upon the intervention at the same time that the action is decided, and the intervener has no right to delay."

On June 14, 1917, a stipulation of all parties recited that the trial had begun, and that it was agreed that intervener might file his petition by June 25th, the parties waiving the right to object to the time of filing. His petition was then filed, but stricken on motion of plaintiff, July 7th; and three days later, defendants filed amendments to their answer; and July 16th, the amended and substituted petition of intervention was filed. The trial does not appear to have proceeded, and no effort appears to have been made since to bring the cause on for hearing. There is no

room, then, for saying that there has been any delay not acquiesced in by the parties.

II.   The main objection, however, to the intervention, is that intervener pleaded no such interest in the matter in litigation as warranted his intervention.   Section 3594 of the Code declares that:

"Any person who has an interest in the matter in litigation, in the success of either of the parties to the action, or against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendant in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the cause, and before the trial commences."

The demurrer, of course, admits all the allegations of the petition of intervention well pleaded, and therefore it must be assumed that, should the plaintiff succeed in the action, the available assets of the Sioux City Trust and Savings Bank would be reduced, first, by the cancellation of a promissory note for $15,000, and second, by the cancellation of capital stock in that amount, on which assessments might be made for the satisfaction of the bank's indebtedness; that said bank, as well as the shareholders, other than Reard, is insolvent; that its officers and directors have ceased to give any attention to its affairs; that the delay in reducing intervener's claim to judgment would permit the property out of which the intervening creditors may satisfy their claims to be put beyond their reach; that all the assets of the bank have been transferred to the Northwestern National Bank, out of which to satisfy its obligations; and that, unless the intervening creditors are permitted to make defense in this suit, none will be made, and in consequence, intervening creditors would lose at least part of their claims.

It will be noted that the interest of these creditors differs essentially from that ordinarily dependent on or incidental to the success or defeat of one of the parties to a suit. The litigation here involves the right of the debtor to $30,000 in securities for its creditors, without anyone representing or looking after their interests. Are they without right in some way to guard or have guarded assets of the debtor in such a case? As the bank is insolvent, and had parted with all its property in trust for the payment of its debts, nothing was to be gained by obtaining a judgment against it, and the creditor necessarily looked to the assets of the bank for the satisfaction of its obligations. If these, with stock assessments, were not sufficient to liquidate its indebtedness, further satisfaction would be unlikely; and, therefore, anything which might increase or prevent diminution of the assets would have a direct bearing on the amount a creditor would be likely to recover. Ordinarily, statutes like that quoted are held to contemplate an interest of such a direct and immediate character as that the intervener will either gain or lose by direct legal operation of the judgment. *Gale v. Frazier,* 4 Dak. 196 (30 N. W. 138) ; *Bray v. Booker,* 6 N. D. 526 (72 N. W. 933) ; *Kansas & C. P. R. Co. v. Fitzgerald,* 33 Neb. 137 (49 N. W. 1100) ; *Smith v. Gale,* 144 U. S. 509 (36 L. Ed. 521). Thus, in the last cited case, the court, speaking through Mr. Justice Brown, said:

"These provisions of the Dakota Code, above cited, are found in the Codes of several of the states, and appear to have been originally adopted from Louisiana, wherein it is held by the Supreme Court, interpreting a similar section, that the interest which entitles a party to intervene must be a direct interest, by which the intervening party is to obtain immediate gain or suffer loss by the judgment which may be rendered between the original parties. *Gasquet v. Johnson,* 1 La. 425, 431. In *Horn v. Volcano Water*

*Co.,* 13 Cal. 62, the Supreme Court of California had oc-
casion to construe a similar provision of the Code of that
state, and held, speaking through Mr. Justice Field, now
a member of this court, that: 'The interest mentioned in
the statute which entitles a person to intervene in a suit
between other parties must be in the matter in litigation,
and of such a direct and immediate character that the in-
tervener will either gain or lose by the direct legal opera-
tion and effect of the judgment. * * * To authorize
an intervention, therefore, the interest must be that created
by a claim to the demand, or some part thereof in suit, or
a claim to or lien upon the property, or some part there-
of, which is the subject of litigation.' In *Lewis v. Harwood,*
28 Minn. 428, the cases from Louisiana and California were
cited with approval. In that case, the persons who sought
to intervene held attachments upon some property subse-
quent to those of the plaintiff in the suit. The suit was
upon certain promissory notes executed to the plaintiff by
the defendants, and the interveners claimed that the notes
were without consideration and fraudulent; that the plain-
tiff's attachments were fraudulent; and that the suit and
attachments were in execution of a collusive scheme be-
tween the plaintiff and defendant to defraud the interven-
ers, who were bona-fide creditors of the defendant. It was
held that the complaint of the interveners did not disclose
such an interest in the subject-matter of the suit as to en-
title them to intervene, and that the plaintiff's motion to
dismiss the same should be granted. The decision was put
upon the ground that, when the judgment was entered
against the defendants, the whole subject-matter of the suit
was disposed of; and that the writ of attachment was a part
of the remedy, and had nothing to do with the cause of ac-
tion. 'If property is seized by virtue of the writ, to which
another has a better right, the vindication of such right in-
volves another and independent judicial inquiry.' The in-

tervention must be not only to protect the direct and immediate interest of the intervener in a suit, but she is bound to make that interest appear by proper allegations in her petition. *Coffey v. Greenfield,* 62 Cal. 602."

See, also, *McClurg v. State Bindery Co.,* 3 S. D. 362 (44 Am. St. 799) ; *Walker v. Sanders,* 103 Minn. 124 (123 Am. St. 276, and note).

A careful examination of the decisions indicates that the expression apparently exacting direct and immediate operation of the judgment on the intervener's interest is quite generally made use of to differentiate those whose gain or loss is of so direct a character as to deny the right to intervene. All, in fact, decided, is that the interest must be direct. *First Nat. Bank v. Clark,* 21 N. M. 151 (153 Pac. 69).

In the note to *Walker v. Sanders,* supra, it is remarked that:

"Any loss or gain by the direct legal effect and operation of a judgment, it is true, will generally, if not universally, justify the granting of an application for leave to intervene; but that this is essential in all cases to sustain an intervention, even though it is so declared by statute, is confidently denied. No one so loses or gains, in the strict sense of the term, unless he is a party or in privity with a party to the proceeding. No intervention can be ordered in favor of a party, for the reason that he is already such, and has an adequate remedy within the original proceeding. *Wynn v. Irvine's Georgia M. H.,* 109 Ga. 287 (34 S. E. 582). Privies may, as we shall hereafter show, intervene, because, as such, they are bound by, and may have the benefit of, the judgment; but they by no means constitute the only class of persons entitled to this remedy, and this may be affirmed, almost without taking into consideration the peculiar language of any statute; for, whether judges or legislators have employed the terms referred to, they did so carelessly

and inadvertently, and have meant no more than that a person is entitled to intervene if the direct operation of the judgment, if enforceable against him, must be to benefit or prejudice him.  Hence, in most of the cases cited in which the general rule was quoted, intervention was sustained, though the party seeking that remedy was not in privity with any of the original parties, and the judgment in the original proceeding, had it been rendered in his absence, could not have operated directly, either for his loss or gain. *Wood v. Denver City Water Works Co.,* 20 Colo. 253 (46 Am. St. Rep. 288).  \* \* \*  On the other hand, though the enforcement of the judgment, when rendered, might benefit or prejudice the applicant for intervention, this does not entitle him to intervene, if its effect is indirect, as where the party for or against whom the judgment may be, may, because of it, become more or less able to satisfy some obligation existing from him to the intervener."

"In equity, no one is entitled to be made or become a party to a suit unless he has an interest in its object.  But it is the usual practice to permit strangers to the litigation, claiming an interest in its subject-matter, to intervene on their own behalf, as to assert their titles."  17 Am. & Eng. Encyc. of Law (2d Ed.) 183.

See *Wightman v. Evanston Yaryan Co.,* 217 Ill. 371 (108 Am. St. 258).

The intervener and other creditors in like situation have a direct interest in the litigation, in that the amount finally received by them to be applied on their claim will be affected by the outcome of this suit in the precise proportion that the available assets of the bank for the satisfaction of its debts are increased or diminished.  In other words, there is a fund out of which creditors are to be paid pro rata, and nothing else is available for that purpose. Whatever increases or decreases such fund necessarily increases or decreases the amount each creditor is to be paid,

and so does in the proportion which the amount of his claims bears to the total amount of all claims. In these circumstances, it seems to us that the creditor, even though without judgment or other lien, has a direct interest in the subject-matter, and would gain or lose directly by the operation of the final judgment. This conclusion does not challenge the rule that, ordinarily, a simple contract creditor is not the guardian of his debtor, and may not intervene because it may be urged for him that, if debtor prevails in the suit, the creditor might stand a better chance to collect. As has been said in many cases, the mere fact that the party for or against whom the judgment may go, may, according to the result, become more or less able to satisfy some obligation, will not entitle the creditor to intervene. But even in cases which affirm this, it has been held that creditors were allowed to prove debts, as in establishing claims where receivers have been appointed, and persons belonging to the class on whose behalf suit is brought are quasi parties, and, of course, may have a standing in court. See *Wightman v. Evanston Yaryan Co.,* supra; *Johnson v. Johnson,* 132 Iowa 457. If creditors who seek to intervene have nothing to urge except that, if the complainant prevails, their debtor would have less assets, it might be conceded that right to intervene did not exist. The facts pleaded, however, are such that it is absolutely certain that, if plaintiff prevails, the interveners must lose, and the loss and its extent are certain, and will consist of such part of this debt as the amount by which the success of plaintiff will definitely and surely deplete the assets of the bank bears to its total assets. That is to say, the bank is insolvent, and is not a going concern. The assets it now has, including the claim it has against the plaintiff, may shrink, but cannot be augmented. If plaintiff's note for $15,000, given the bank, be cancelled, and he is thereupon further relieved from a stockholder's assessment in a like sum, it is absolutely certain that the claim of the interven-

ers, which is for a definite amount, and conceded to be correct, will be scaled in a definite sum. If that is not a direct interest in the subject of litigation, if this does not constitute being interested in the success of one of the parties rather than the other, we can conceive of no use to which the statute of intervention may be put.

We are persuaded that the court erred in sustaining the demurrer to the amended and substituted petition of intervention and striking the same from the files. More may have been demanded therein than intervener was entitled to, but he should have at the least been permitted to defend or join in defending against the cause of action alleged in the petition.—*Reversed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.