NEW BRUNSWICK DISTRICT COURT.

BRUNO LUBOWICKI, PLAINTIFF, v. TRAVELERS INSURANCE COMPANY, DEFENDANT.

Decided October 30, 1939.

For the plaintiff, *Harold S. Lewine.*

For the defendant, *John C. Stockel.*

For General Motors Acceptance Corporation and General Exchange Insurance Corporation, *Chivian & Chivian.*

MORRISON, D. C. J.   The novel questions presented in this matter, arose from the following facts:

The plaintiff, on June 17th, 1938, purchased a car for the sum of $227.36 under a conditional sales contract which was subsequently purchased by the General Motors Acceptance

Corporation. The plaintiff made a down payment of $65 and one monthly payment of $13.53 according to the terms of the said contract, and owed a balance of $148.83 as of August 1st, 1938. The General Exchange Insurance Corporation issued a collision policy on the car for a period of one year from the date of sale.

On August 1st, 1938, plaintiff became involved in an accident with a car owned by one Martin Griffin, and driven by one Herbert Griffin, which resulted in substantial damages to his car. Plaintiff retained counsel to represent him in the collection of damages against the Griffins. The defendant, The Travelers Insurance Company, carried, what is commonly known as, liability insurance on the Griffin car, and did appear for and furnish representation to the Griffins in all matters arising out of the said accident.

Suit was subsequently started by the plaintiff against the Griffins in the Second Judicial District Court of Monmouth county, in the sum of $500, to recover damages and depreciation to the car, towing and storage charges, and for deprivation of the use and enjoyment thereof. In the meantime while that suit was pending, the car was repossessed and resold by the General Motors Acceptance Corporation since plaintiff failed to make his required monthly payments after August 1st, 1938, the date of the accident. The car was sold for $10. At the same time, the General Motors Acceptance Corporation, acting independently of the plaintiff and without his knowledge or consent, made claim to the General Exchange Insurance Corporation under the collision policy, and settled its claim for $110. In consideration thereof, the General Motors Acceptance Corporation assigned all of its right, title and interest, in and to the conditional sales contract, to the extent of said payment, to the General Exchange Insurance Corporation. The General Motors Acceptance Corporation then credited plaintiff's account with the amount realized from the resale, the payment received from the General Exchange Insurance Corporation, which, together with a rebate secured from canceling the collision policy, left a balance allegedly due of $45.35.

Both companies knew of the suit which plaintiff had instituted against the Griffins, but took no steps to protect their interests other than to send notices to the defendant of their claims against the plaintiff. The General Exchange Insurance Corporation claimed $110 by reason of the subrogation, while the General Motors Acceptance Corporation claimed $45.35 which is plaintiff's balance after crediting his account with the said $110. It is asserted on behalf of these companies that immediately after the accident plaintiff and his attorney were placed on notice of their claims in this matter, but I do not find this to be the fact. I find that neither plaintiff, nor his attorney, had knowledge of the notices received by the defendant from the General Motors Acceptance Corporation, or the General Exchange Insurance Corporation, until after the settlement agreement hereinafter mentioned, was breached.

This, then, was the situation on November 30th, 1938, when the defendant and plaintiff compromised and settled the suit brought against the Griffins. I find the terms of the settlement to consist of the following: In consideration of the sum of $178.25, plaintiff would discontinue his suit against the Griffins, and upon receipt of a certified copy of the discontinuance and a release to the Griffins, defendant would give plaintiff its draft in the sum mentioned, made payable to him and his attorney. It is significant that there was no mention by the defendant to the plaintiff of the claims of the General Motors Acceptance Corporation or the General Exchange Insurance Corporation, either at this time, or before the settlement had been agreed. I find no fraud or misrepresentation on the part of the plaintiff, nor any collusion between plaintiff and defendant, but on the contrary, the compromise and settlement agreement was *bona fide* and deliberately made.

Accordingly, plaintiff discontinued his suit and sent a certified copy of the discontinuance, together with his release, to the defendant, and received a draft made payable to him and his attorney and also the General Motors Acceptance Corporation. Plaintiff refused this draft and returned it to

the defendant. Upon defendant's refusal to make a new draft, plaintiff instituted this suit against the defendant, alleging the breach of the compromise and settlement agreement, and seeking recovery of the consideration thereof. Defendant contends: (1) that the notices sent by the General Motors Acceptance Corporation and the General Exchange Insurance Corporation created liens on the settlement money, and consequently, payment thereof properly included them. (2) That the General Motors Acceptance Corporation and the General Exchange Insurance Corporation have interests in the car which are superior and prior to the plaintiff's, and therefore, the settlement must include them, or defendant is subject to a further suit and recovery for the car.

As to the first contention, I find no legal basis to support it. No lien can exist at law, unless authority for its existence can be found either in the common or maritime law, or by virtue of statutory enactment. 37 *Corp. Jur.* 306, ¶ 2. No such authority has been pointed out or could be found to aid this contention, hence the notices in question cannot be construed as creating liens.

As to the second contention, assuming the conclusion is correct, it would not relieve the defendant from the effect of the compromise and settlement agreement made with plaintiff. The compromise of a disputed claim made *bona fide,* is a good consideration for a promise, whether the claim be in suit, or litigation has not been actually commenced, even though it should ultimately appear that the claim was wholly unfounded; the detriment to the party consenting to a compromise arising from the alteration in his position, forms the real consideration which gives validity to the promise. The court will not inquire into the adequacy or inadequacy of the consideration of a compromise fairly and deliberately made. *Military College Co.* v. *Brooks,* 107 *N. J. L.* 28; 147 *Atl. Rep.* 488; *Grandin* v. *Grandin,* 49 *N. J. L.* 508; 9 *Atl. Rep.* 756, 759; 60 *Am. Rep.* 642; *Merkel* v. *Merkel,* 87 *N. J. Eq.* 154; 99 *Atl. Rep.* 924; *affirmed,* 87 *N. J. Eq.* 653; 101 *Atl. Rep.* 1054.

The contention that defendant, as a result of its compro-

mise and settlement agreement with plaintiff is subject to a further suit and recovery, goes to the adequacy of the consideration for the agreement and therefore, falls within the rule as above stated.

This contention might also be answered that the relationship between plaintiff and the General Motors Acceptance Corporation is similar to bailee-bailor (*Commercial Credit Co. v. Satterthwaite*, 107 *N. J. L.* 17; 150 *Atl. Rep.* 235), and one dealing with a bailee concerning the bailed property does so at his peril. 8 *Corp. Jur. Secundum, Bailments* 313, § 39, and cases cited.

In the light of these principles, it is unnecessary to decide whether defendant is subject to a further suit and recovery as this conclusion has been hypothetically assumed and found to present no defense.

Since defendant's points are unavailing, judgment should be accordingly entered, but the matter is further involved by an application by the General Motors Acceptance Corporation and the General Exchange Insurance Corporation made during the trial of the cause to be made parties-plaintiffs and for judgment to be entered in their favor against the defendant. The petition to intervene is brought under *R. S.* 1937, 2:27-24 and 31. The latter provision which concerns the non-joinder or mis-joinder of parties, is not pertinent to the present inquiry. The salient portion of *R. S.* 1937, 2:27-24, is as follows: "Joinder as parties plaintiff. Except as otherwise herein provided and subject to rules, all persons claiming an interest in the subject-matter of the action and in obtaining the judgment demanded, either jointly, severally or in the alternative, may join as plaintiffs."

It is not the mere claim of interest that will permit a joinder of other parties, since the statute is permissive rather than mandatory. A person applying to be joined as a party to an action, must not only claim, but prove such interest as falls within the provisions of the statute. It then is incumbent to examine the status of the petitioners in order to ascertain what interest, if any, they have in the within suit and in obtaining judgment therein.

All of the facts as alleged in the petition, which I deem to be material, are included in the above recited statement of facts. The petition concludes with the following averment: "In view of the prior rights of the petitioners, we respectfully petition your honor, that we be made a proper party-plaintiff to the above entitled matter, and in this way, make possible one and final determination of all the rights and existing claims, and your petitioner will ever pray, &c."

It is apt to inquire "prior rights" in what?

Let us examine the legal positions of petitioners separately, first with respect to the defendant and then with respect to the plaintiff.

The petitioner, General Motors Acceptance Corporation, bases its claim to intervene under the principle as laid down by *Commercial Credit Co.* v. *Satterthwaite, supra,* holding that a conditional vendor or the assignee of the vendor's interest in the conditional sales contract has a property interest in the chattel which entitles him to maintain, after default, an action against a third party for injury to the chattel from negligence.

The petitioner, General Exchange Insurance Corporation, bases its claim to intervene on the subrogation of the rights of the General Motors Acceptance Corporation and the plaintiff against the third party wrongdoer to the extent of its payment under its collision policy. Plaintiff does not concede that his rights are subrogated since he contends that he made no claim under the policy, and the claim made by the General Motors Acceptance Corporation and the settlement thereunder were made without his knowledge and consent. At this point, I am of the opinion that the ruling in *Bater* v. *Cleaver,* 114 *N. J. L.* 346; 176 *Atl. Rep.* 889, 892, applies. There our Court of Errors and Appeals held: "While it is a doctrine of purely equitable origin and nature, it is now settled that, when the right of subrogation itself is practically conceded, and there remains to be enforced only the right of realizing the value of the subject-matter, such right may, on proper occasion, be within the cognizance of a court of law." Since petitioner's right to subrogation is not "practically

conceded," it follows that this court is not the proper forum to try this issue.

However, both claims to intervene because of petitioners' "rights" against the defendant are based upon a common misconception of petitioners' relationship with defendant. Assuming, but not deciding, that the petitioner, General Motors Acceptance Corporation, had the right of maintaining an action against the third party wrongdoers (the Griffins), the present action is not brought against the wrongdoers and they are not parties to it, nor have they an interest in it.

And assuming, but not deciding, that the petitioner, General Exchange Insurance Corporation, is subrogated to the extent of its payment, to the rights of the General Motors Acceptance Corporation and the plaintiff, the same infirmity exists. Rights which petitioners claim they have against the Griffins, are clearly distinguishable from their rights as against the defendant. Recovery from the Griffins for damages to the car is one thing, but recovery from the Griffins' insurer on an agreement of compromise and settlement made solely with the plaintiff, rests on an entirely different and unrelated basis.

Permitting petitioners to intervene would result in making a new and different agreement of compromise and settlement between plaintiff and defendant and this, a court will not do. *Kupfersmith* v. *Delaware Insurance Co.,* 84 *N. J. L.* 271; 86 *Atl. Rep.* 399; *Ann. Cas.* 1914C 1172; 45 *L. R. A.* (*N. S.*) 847; 13 *Corp. Jur.* 525. I am not called upon to decide what rights the petitioners had, or have, against the Griffins, but suffice to say, they have no enforceable rights against the defendant in this action.

Now as between petitioners and plaintiff, petitioners allege "rights" as against him which they claim should permit them to intervene. These rights, it may be inferred, are believed to arise from, first, a trust relationship between plaintiff and petitioners, and second, plaintiff's indebtedness to petitioners.

As to the petitioner General Motors Acceptance Corporation, there is authority to the effect that a conditional vendee when he obtains a recovery by suit or compromise, against a

third person, holds the balance beyond his own interest in trust for the conditional vendor. *Harris* v. *Seaboard Air Line Railroad Co.,* 190 *N. C.* 480; 130 *S. E. Rep.* 319; 49 *A. L. R.* 1452; *Fletcher* v. *Perry,* 104 *Vt.* 229; 158 *Atl. Rep.* 679; *First National Bank* v. *Union Railway Co.,* 153 *Tenn.* 386; 284 *S. W. Rep.* 363; 8 *Corp. Jur. Secundum, Bailments* 371, 375, § 56; 3 *R. C. L.* 128, ¶ 49.

While, as to the petitioner General Exchange Insurance Corporation, the principle stated by Vice-Chancellor Backes in *Camden Fire Insurance Association* v. *Prezioso,* 93 *N. J. Eq.* 318; 116 *Atl. Rep.* 694, may apply, that is, "The insured can be called upon to account to the insurer-subrogee only if he has recovered more from the insurer and the wrongdoer than the total of his loss, and then only for the excess. The excess he holds in trust for the insurer."

Plaintiff insists that his liability to petitioners is controlled by the Uniform Conditional Sales law (*R. S.* 1937, 46:32-28), which provides for the recovery by the seller of the deficiency upon resale from the buyer—that he is not indebted to them until they establish their claims by a deficiency action against him.

But these issues need not be decided now, since they arise *in futuro.* The application of the principles in the last cited cases are predicated upon the "recovery" (italics mine) by the conditional vendee or the insured (as the case may be) of the money in question. A trust cannot be created unless there is trust property, an expectation or hope of receiving property in the future cannot be held in trust. *Restatement of the Law of Trusts,* §§ 74, 86. When plaintiff actually recovers the settlement money, petitioners have adequate remedies to protect their alleged interests therein but the anticipated relationship of trustee and *cestui,* when and if plaintiff recovers the settlement money, affords no basis for the intervention of petitioners in plaintiff's action to recover the settlement money.

The ruling in *First National Bank* v. *Union Railway Co., supra,* lends support to this view, at least in so far as it concerns the petition of the General Motors Acceptance Corpo-

ration. There the court held that "the vendee is not such a trustee as that he cannot settle by compromise without the sanction of the vendor." If the vendee can settle by compromise without the sanction of the vendor, it would seem logically to follow that he can maintain an action to recover for a breach of the compromise and settlement without the intervention of the vendor.

Nor on the theory that plaintiff is indebted to petitioners to the amount of their respective claims, do petitioners disclose intervenable interests.

It is well settled that a mere creditor of one of the parties has no right to intervene, although he may have an indirect interest in the result of the action. *Check* v. *Kaplan,* 280 *Mass.* 170; 182 *N. E. Rep.* 305; *Reard* v. *Freiden,* 184 *Iowa* 823; 169 *N. W. Rep.* 245; *Honegger* v. *Wettstein,* 94 *N. Y.* 252; *Britton* v. *Bohde,* 85 *Hun* 449; 32 *N. Y. S.* 882; 20 *R. C. L.* 687; *Tonkonogy* v. *Levin et al.,* 106 *Pa. Super.* 448; 162 *Atl. Rep.* 315; *Massachusetts Loan and Trust Co.* v. *Brown,* 17 *R. I.* 568; 23 *Atl. Rep.* 761; *Rhoades* v. *Pennsylvania Co., C. C.,* 93 *Fed. Rep.* 533; *McKemy* v. *Supreme Lodge A. O. U. W.,* 6 *Cir.,* 180 *Fed. Rep.* 961; 104 *C. C. A.* 117; 47 *C. J.* 105 and cases cited.

It has been held that ordinarily a simple contract creditor is not the guardian of his debtor, and may not intervene because it may be urged for him that, if debtor prevails in the suit, the creditor might stand a better chance to collect. The mere fact that the party for or against whom the judgment may go, may become more or less able to satisfy some obligations, will not entitle his creditor to intervene. *Reard* v. *Freiden, supra.*

In New Jersey, it was held that the purposes of statutory provisions as to joinder of third party defendants, is to permit a complete determination of the original controversy which plaintiff has submitted to the court for decision, not to inject a new controversy, with which plaintiff is not concerned, into plaintiff's cause of action. *Raymond-Commerce Corp.* v. *Warner,* 16 *N. J. Mis. R.* 548; 2 *Atl. Rep.* (2d) 878. I take it that this ruling is equally applicable to *R. S.*

1937, 2:27-24, providing for joinder as parties-plaintiff. The effect of permitting creditors to intervene in their debtor's actions, is aptly described by the following excerpts from some of the cases heretofore cited:

"Appellants were at best ordinary creditors of Tonkonogy. To hold that appellants had the right to intervene would be equivalent to saying that any creditor of a plaintiff in a suit for money might intervene. It is stating the matter mildly to say that this would lead to confusion, complicate the case, and produce a "multifariousness of parties and causes of action." *Tonkonogy* v. *Levin et al., supra.*

"He was a judgment creditor, but that fact alone gave him no lien or other superior claim to that which his debtor might recover in the present action. * * * He had acquired no other preferential right over other creditors of the plaintiff. * * * If he were permitted to intervene, there would be no reason why his creditor might not intervene to subject his own debt, when established against the debt due the plaintiff, to payment of that creditor's claim and so on indefinitely; creditors of intervenors in turn might pile litigation upon litigation in one proceeding. There is no ground in law permitting Silverman on the allegation of his petition to inject himself into this action in which he has no legal interest." *Check* v. *Kaplan, supra.*

And so here, petitioners, as alleged creditors of the plaintiff, have no such interest as would permit them to intervene. Their application, if granted, will inject new and different controversies into plaintiff's cause of action, and will result in multifariousness of parties and causes of action contrary to the intendment of the statute. The orderly way in law is for each one to pursue his own rights in his own action, and if, in so doing, another seeks to circumvent him by fraud, the existing remedies are ample. *Massachusetts Loan and Trust Co.* v. *Brown, supra.*

Accordingly, the petition must be denied and judgment entered in favor of the plaintiff against the defendant in the sum demanded, with interest and costs.